George McLAUGHLIN, Plaintiff-Appellant,

v.

Frank A. HALL et al., Defendants-Appellees.

No. 74–1148.

United States Court of Appeals, First Circuit.

June 27, 1975.

---

Richard E. Shapiro, Boston, Mass., with whom Dianne J. Kenty, South Boston, Mass., was on brief, for plaintiff-appellant.

Michael C. Donahue, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Criminal Bureau, Boston, Mass., were on brief, for defendants-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff appeals from the district court's determination that his transfer from the Massachusetts Correctional Institution, Norfolk, to MCI, Walpole, did not constitute a denial of due process. Since our opinion this day in *Fano v. Meachum,* 1 Cir., 520 F.2d 374, establishes that such a transfer effects a deprivation of liberty sufficient to bring the due process clause into operation, we proceed to scrutinize the adequacy of the procedures utilized here.

On or about March 19, 1973 plaintiff was transferred from MCI, Walpole, to MCI, Norfolk, and no disciplinary reports were filed against him prior to the current controversy. On October 18, 1973 Deputy Commissioner Joseph Higgins, Massachusetts Department of Correction, wrote to the acting superintendent at Norfolk with regard to plaintiff:

"Please be advised that during the month of October the following information has been received regarding the Subject.

"October 4, 1973—Information was obtained from a law enforcement agency that an escape is planned from MCI Norfolk on some foggy night and the Subject was mentioned as a participant.

"October 10, 1973—Information was obtained from a law enforcement agency that a gun was hidden in a certain location at MCI Norfolk. Although this gun was not placed in this location by the Subject, he knew where it was hidden and planned to use it in an escape. This gun was found in the exact position as described by our information.

"October 17, 1973—Information was obtained from the same law enforcement agency (October 10) that the Subject now has another gun at his disposal and he is still planning to escape."

After plaintiff and his attorney were informed that plaintiff might be reclassified, plaintiff's counsel consulted with an attorney for the Department of Correction regarding the procedures which would be followed. It was agreed that plaintiff would have a hearing at which he could be represented by counsel, and that he would have the right to cross-examine adverse witnesses, present testimony on his own behalf, and tape record the proceedings. The Board was to render a written statement of reasons for its decision, and plaintiff was to have the opportunity to appeal the Board's recommendation prior to Commissioner Hall's final decision. The substance of the allegations concerning plaintiff was related to his attorney, and was also set forth in the Notice of Classification Hearing dated October 18, which informed plaintiff that a hearing would be held and that a transfer might result therefrom.

The hearing was held on October 23 and recorded in full. The October 18 memorandum was introduced, and Theodore Ristaino, Deputy Superintendent of Norfolk, testified that he had received the information contained therein from Deputy Commissioner Higgins. Ristaino was "extensively cross-examined" by plaintiff's counsel, but this proved to be little more than shadow-boxing since Ristaino had no first-hand, or even second-hand, knowledge of plaintiff's alleged misdeeds. Ristaino could not even name the law enforcement agency which had provided the information, nor was

he able to provide any information about the ultimate source of the information transmitted by the agency. Plaintiff's counsel endeavored to have Higgins, the author of the memorandum, called as a witness at the hearing, but this request was denied. Plaintiff's counsel's repeated efforts to have the source of the information identified were all unsuccessful. Neither Higgins, the informant, nor the recipient of the informant's report at the law enforcement agency testified. The parties have stipulated that the classification board made no attempt to arrange for the questioning of these individuals on its own. Plaintiff presented two witnesses who testified to his active involvement in providing legal assistance to other Norfolk inmates, and he took the stand himself to deny any knowledge of or involvement in the alleged incidents being considered by the board.

The board recommended that plaintiff be transferred to Walpole. Its memorandum to the commissioner recited the contents of the October 18 memorandum and contained the following evaluation:

"The validity of the extremely serious information implying that Mr. McLaughlin represents a security risk and a danger to others cannot be documented by this Board. However, as some of the information has already been substantiated, there is reason to believe that the remainder of the information could be equally valid.

"As M.C.I., Norfolk is a medium security institution and in light of the information referred to above, the Board felt it appropriate that Mr. McLaughlin be transferred to a more secure facility."

The board also expressed the opinion that transfer to Walpole would not necessarily mean the end of plaintiff's legal

assistance activities. Counsel for plaintiff filed a detailed appeal from the board's recommendation, but the commissioner nonetheless ordered plaintiff transferred to Walpole.[1]

■ The single question presented on this appeal is whether the board's failure to inquire into the credibility of the informant and the reliability of his information was so fundamentally unfair to the plaintiff as to deprive him of due process. We acknowledge at the outset that we are troubled by the realization that the administrative decision adverse to plaintiff was based exclusively on information allegedly provided by an undisclosed and wholly untested informant. The fact that one gun was found where it was reported to be provides scant corroboration, since the hiding place was in a housing unit other than plaintiff's and there was no independent evidence linking him to the gun. The classification board's guarded language in summing up the evidence against plaintiff offers no reassurance lessening the apprehension that plaintiff's transfer may be directly attributable either to an unintentionally inaccurate report or a maliciously contrived one.

In arguing that the board could not constitutionally fail to investigate the credibility of the informant's report, plaintiff relies in large part[2] on language contained in our original decision in *Palmigiano v. Baxter*, 487 F.2d 1280, 1290 (1st Cir. 1973):

"We would caution, however, that in instances where the identity of an adverse witness is withheld from an accused inmate, out of a legitimate fear that otherwise the witness would be subject to retributive violence, the board has a strong obligation to summon the adverse witness before it, in

1. The board recommended that plaintiff be transferred to the general population at Walpole, and the commissioner simply directed that he be sent to Walpole, but plaintiff unaccountably was placed in segregation upon arrival. This unsolved riddle does not affect our disposition of the issues here presented.

2. *Birzon v. King*, 469 F.2d 1241 (2d Cir. 1972), is also cited. That case is easily distinguishable on its facts, but most importantly it involved parole revocation, which under *Wolff* is governed by a different standard of due process than that applicable to disciplinary proceedings.

camera, and probe the credibility of the witness."

Plaintiff asserts that this principle was stated as one of constitutional dimension, but the interpretation is questionable for several reasons. The disciplinary hearings at issue in *Palmigiano* were subject to the so-called *Morris* rules,[3] which guarantee the right to call witnesses and cross-examine them. Even on its own terms, then, the quoted language in *Palmigiano* might well be read as based upon the rules rather than upon the Constitution. More importantly, this appears to be the interpretation we adopted when we reconsidered *Palmigiano* after remand from the Supreme Court. We preferred to reconsider each instance in which the earlier opinion had recognized a constitutionally protected right, but did not deal with the right that plaintiff now claims. *Palmigiano v. Baxter*, 510 F.2d 534, 535 (1st Cir. 1974), *cert. granted*, 421 U.S. 1010, 95 S.Ct. 2414, 44 L.Ed. 2d 678 (1975).

Even if we were inclined now to articulate a specific constitutional rule requiring in camera examination, we would regard that path as barred by *Wolff*. We do not label as insubstantial plaintiff's argument that inquiry into the reliability of an informant is necessary to protect an inmate adequately against arbitrary actions by prison officials, *Wolff*, 418 U.S. at 558, 94 S.Ct. 2842. *Wolff* indicates, however, that the development of specific procedural requirements beyond those enumerated in that opinion must be left in the first instance to the sound discretion of corrections authorities. *Id.* at 568–69, 94 S.Ct. 2842. At least for the present, courts should await the results of efforts by prison officials to accommodate institutional requirements to the need for fairness in proceedings which impose upon inmates substantial deprivations.[4]

In this case there exists an additional reason for restraint on our part. The all-but-exclusive thrust of plaintiff's position before the prison authorities was a claim of rights to confrontation and cross-examination, and it is conceded that *Wolff* disposes of this issue adversely to plaintiff. Plaintiff paid scant attention at that time to the issue which he presses now. The stipulated facts and complaint reveal his repeated efforts to establish a basis for cross-examination, but contain only one reference to a request by plaintiff's attorney that the board make further inquiries as to the source of the adverse information. The appeal taken to the commissioner states that the board failed to conduct an inquiry, but does not allege that plaintiff requested that one be undertaken. While the relative emphasis given to plaintiff's alternative arguments is understandable when it is remembered that the parties were operating in a pre-*Wolff* world, the difficulties which this history raises for us are not diminished by the fact that they were unavoidable. Now that *Wolff* has indicated the rough contours of due process in the prison environment, it is to be expected that inmates will present more directly the claim that was raised here only tangentially. Our efforts to decide whether the authorities' responses pass constitutional muster will then, hopefully, be undertaken on the basis of a record which indicates which steps have been taken to verify information provided by undisclosed informants and also the reasons for any refusal to conduct an inquiry.

Affirmed.

LEVIN H. CAMPBELL, Circuit Judge (concurring).

I concur in the result but for reasons expressed in my dissenting opinion in *Fano v. Meachum*, 520 F.2d 374 (1st Cir. 1975), I do not agree that an inmate's stake in avoiding transfer between the

---

3. *See Morris v. Travisono*, 310 F.Supp. 857 (D.R.I.1970).

4. For example, in lieu of an in camera examination of an informant where such would be inadvisable, authorities may well devise other ways of indicating on the record indicia of reliability and the steps taken to verify information.

correctional institutions of a single state gives rise to a "liberty" or "property" interest protected by the fourteenth amendment. Accordingly, I would not reach the need to analyze the adequacy or inadequacy of the proceedings provided in this case.