RUSSELL NELSON & another[1] vs. COMMISSIONER
OF CORRECTION.

Norfolk. March 10, 1983. — November 10, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

Imprisonment. Practice, Civil, Declaratory relief. Habeas Corpus.
Due Process of Law, Prison disciplinary proceeding.

Where two prisoners, by a petition for a writ of habeas corpus, challenged
the constitutionality of Department of Correction regulations under
which they had received punitive sanctions by a State prison discipli-
nary board, but the prisoners were neither eligible for, nor seeking,
immediate release from custody, it was properly within the discretion
of a Superior Court judge to treat the proceeding as one seeking
declaratory relief. [386-387]
Alleged constitutional infirmities in prison disciplinary proceedings con-
ducted by the Department of Correction were an appropriate subject
for declaratory relief. [387-388]
Forfeiture of two prisoners' statutory "good time credits" as punishment
for their misconduct within a correctional institution affected a State-
created liberty interest entitling them to the due process guarantees of
the Federal Constitution and, consequently, such a forfeiture could be
imposed by a prison disciplinary board only after proceedings comply-
ing with minimal due process requirements. [388-389]
Discussion of Federal due process standards applicable to use of hearsay
information from informants in prison disciplinary board proceedings
against an inmate. [389-394]
The record of proceedings before a prison disciplinary board with respect
to hearsay informant information adverse to two prisoners was not suf-
ficient to permit a reviewing court to conclude that the board, after
due inquiry, had found the informants and their information to be
reliable. [394-396]
Where the Federal due process rights of two prisoners were violated by
the failure of pertinent State regulations to prescribe adequate precau-
tions governing the use of hearsay information from informants in pro-
ceedings before a prison disciplinary board, a judge properly ordered

[1] Frank Goldman, another inmate.

restoration of the prisoners' good time credits which the board had ordered forfeited; however, the judge erred in ordering that the prisoners be retransferred to their previous place of confinement inasmuch as a prisoner's placement within the prison system does not give rise to any State-created liberty interest to which due process guarantees can attach. [396-397]

CIVIL ACTION commenced in the Superior Court Department on September 21, 1979.

The case was heard by *Mitchell, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Annette Benedetto,* Assistant Attorney General, for the defendant.

*Barry P. Wilson* for the plaintiffs.

LIACOS, J. This case, and three accompanying cases presented by other plaintiffs, raise questions as to the constitutionality of procedures prescribed by State regulations for State prison disciplinary hearings.[2]  The plaintiffs, Russell Nelson and Frank Goldman,[3] filed a combined pro se petition for a writ of habeas corpus and declaratory relief. The plaintiffs contend that their "constitutional right to due process in a prison disciplinary board hearing"[4] was vio-

---

[2] See *Real* v. *Superintendent, Mass. Correctional Inst., Walpole, post* 399 (1983); *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole, post* 409 (1983); *Cassesso* v. *Commissioner of Correction, post* 419 (1983).  A fifth case, *Royce* v. *Commissioner of Correction, post* 425 (1983), raises the issue of the effect of an alleged violation by correctional officials of the same body of State regulations.

[3] Nelson is serving a term of fifteen to twenty-five years for armed robbery.  Goldman is serving a term of twenty-five to forty years for armed robbery while masked.

[4] In their brief, the plaintiffs fail to indicate on which Constitution they base their contentions.  At oral argument plaintiffs' counsel indicated that he was not raising any issues under the Declaration of Rights of the Constitution of the Commonwealth.

We do not address, therefore, the question whether we would interpret our Declaration of Rights to provide greater due process rights for prison disciplinary hearings than those minimal requirements mandated by the United States Constitution.  See *Attorney Gen.* v. *Colleton,* 387 Mass.

lated in a hearing in which the disciplinary board (board) of the Department of Correction relied solely on informant hearsay information in finding the plaintiffs guilty of offenses committed within a penal institution. Nelson and Goldman sought the removal of the sanctions imposed by the board.

After a hearing on the merits, a Superior Court judge in Norfolk County made findings, rulings, and an order, and entered judgments declaring that the board arbitrarily denied the plaintiffs due process of law. The judgments also set forth standards for the protection of prisoners' minimal due process rights in disciplinary hearings involving informants, and entered judgments ordering the plaintiffs returned to their status prior to the imposition of sanctions by the board and the Commissioner of Correction (Commissioner).[5]

The defendant appealed and sought a stay of the judgments pending appeal, which was denied by the Superior Court judge but granted by a single justice of the Appeals Court. The defendant's appeal from the judgments of the Superior Court is before us on our granting of his application for direct appellate review.

The defendant contends that the trial judge erred in not dismissing the complaint to the extent it constituted a petition for habeas corpus relief. The defendant further claims that, in so far as the complaint sought declaratory relief, his motion to dismiss the action should have been granted because judicial review under G. L. c. 231A is not available with respect to administrative prison proceedings. The defendant argues that the only judicial review available to

_____

790, 795-796 & n.5 (1982), and cases cited. Cf. *Smith* v. *Rabalais*, 659 F.2d 539, 546 n.20 (5th Cir. 1981); *Lombardo* v. *Meachum*, 548 F.2d 13, 15 n.3 (1st Cir. 1977).

The plaintiffs do not contend that the disciplinary board failed to follow the procedures required by State regulations. See 103 Code Mass. Regs. § 430.01, et seq. (1978). Cf. *Royce* v. *Commissioner of Correction*, *supra*.

[5] The sanctions imposed, including time in isolation, are described later in this opinion. Because the plaintiffs had already served their isolation time, the trial judge did not address his remedy to this sanction.

the plaintiffs is an action in the nature of certiorari pursuant to G. L. c. 249, § 4. Finally, the defendant contends that the procedures followed by the board, in accordance with the prison regulations governing discipline, 103 Code Mass. Regs. § 430.01 et seq. (1978), are constitutionally valid under the principles set forth in *Wolff* v. *McDonnell,* 418 U.S. 539 (1974).

We conclude that the action for declaratory relief was brought properly, and that the due process rights of the plaintiffs guaranteed by the United States Constitution were violated by the failure of the pertinent State regulations to prescribe adequate precautions in the use of informant information by the board.

We uphold that part of the ruling of the judge pertaining to loss of statutory good time credits. However, for reasons we set forth later in this opinion, the judgments entered must be set aside, new judgments declaring the rights of the parties must be entered, and the judge, on motion of the defendant, is to remand the matter to a disciplinary board for further hearings.

The facts are these. · The plaintiffs are inmates lawfully committed to the custody and control of the Department of Correction. At the time of the disciplinary actions underlying this appeal, both plaintiffs were inmates of the Massachusetts Correctional Institution at Norfolk (M.C.I., Norfolk), a medium security institution. Both Nelson and Goldman were accused by Deputy Superintendent Terrance Holbrook in disciplinary reports of possession of a firearm in violation of 103 Code Mass. Regs. § 430.22 (15) (1978), and of "[v]iolating any law of the Commonwealth of Massachusetts or United States," in violation of 103 Code Mass. Regs. § 430.22 (30) (1978). Nelson was also accused of stealing in violation of 103 Code Mass. Regs. § 430.22 (26) (1978).

The deputy superintendent made these allegations based on information he had received from a "reliable informant, that inmate Russell Nelson had broken into [an office at M.C.I., Norfolk, on January 22, 1978]. Following this entry, inmate Nelson came into the possession of a firearm

within the confines of M.C.I. Norfolk." The disciplinary
reports further stated that Nelson had sold the firearm to
another inmate and that Goldman knew the whereabouts of
that weapon. Both reports designated the offenses as major
disciplinary matters. See 103 Code Mass. Regs. § 430.09 (2)
(1978).

Each plaintiff received a copy of his respective discipli-
nary report and notice of an impending disciplinary hearing
before the board. The notice to each plaintiff indicated
that he could request legal representation at the hearing, re-
quest the presence of the reporting officer, or call witnesses.
Nelson formally asked for the presence of another inmate,
Kenneth Courtney. Goldman did not request any witnesses.

On March 15, 1978, the board heard the charges against
the plaintiffs in separate, consecutive hearings. Both plain-
tiffs were represented by counsel, and both pleaded not
guilty. The disciplinary hearing procedures were governed
by 103 Code Mass. Regs. § 430.00 et seq. (1978).[6]

A. *Russell Nelson's hearing.* After being told that he had
a right to remain silent because of the possibility of refer-
ence of the matter to the district attorney and after a read-
ing of the disciplinary report, the chairman of the board
told Nelson that it would determine in executive session if
disclosure of the information would create a substantial risk
of harm to the informant or informants (hereinafter, "infor-
mants"), to another person, or to institutional security. He
was told also that the board would rule on the reliability of
the informants and the information. The chairman in-
dicated three factors that would be considered by the board
in assessing reliability. The three factors stated were pos-
sible corroborating evidence, possible motives of the infor-
mants, and previous reliable information that had been pro-
vided in the past. The board then went into an executive
session.

---

[6] The Department of Correction has promulgated rules and regulations
for disciplinary actions, pursuant to G. L. c. 124, § 1 (*b*), (*i*), & (*g*), G. L.
c. 127, § 33, and G. L. c. 30A, § 1A. See 103 Code Mass. Regs. § 430.01
et seq. (1978).

No informant appeared in camera before the board, and Deputy Superintendent Holbrook withdrew after presenting the informant information. Upon returning from executive session, the chairman announced that the informant was determined to be reliable and that the information was reliable and independently corroborated. Declaring that disclosure would jeopardize the informants and institutional security, the board summarized the informant information, heard in camera, by repeating the disciplinary report. Although admitting that the informants had a motive for supplying the information, the board, on request of plaintiff's counsel, refused to reveal the number of informants, the type of firearm stolen, whether the information was the personal knowledge of the informants or hearsay, and whether the informants had proved reliable in the past. The board also declined to disclose when Deputy Superintendent Holbrook had received the information from the informants.

No physical evidence, including the allegedly stolen gun, was produced. The only corroboration offered by the board was an incident report and testimony by Correctional Officer Duval that, at an unspecified time, he saw Nelson with another inmate near the office allegedly entered on the day of the break-in. Nelson testified that he left his unit only once that day to deliver his and another inmate's laundry. His testimony was supported by his requested witness.

Based on the informant information, and the incident report and testimony, the disciplinary board found Nelson guilty. The sanctions imposed were thirty days of isolation, forfeiture of 120 days of good time, referral of the matter to the district attorney, and recommendation of reclassification.[7]

Nelson received a written statement by the board summarizing the evidence on which it had relied. Again, the board refused to disclose any information about its execu-

---

[7] See G. L. c. 127, § 129. The statutory right to have one's sentence reduced for good conduct during incarceration is referred to as "good time", "good time days", or "good time credits". The district attorney took no action on the matter.

tive session, contending that disclosure would create a substantial risk of harm to the informants, and would threaten institutional security.[8]

Nelson's appeal to the Commissioner was denied. He served his isolation time and, on May 22, 1978, was reclassified to M.C.I., Walpole, a maximum security institution, where he is presently an inmate.

B. *Frank Goldman's hearing.* Goldman's disciplinary hearing was conducted in a manner similar to Nelson's hearing. However, there was one difference in that no evidence was offered other than the informant information. The judge found that, in Goldman's hearing, the board did indicate that there was more than one informant and that one informant corroborated the information of the other or others.

---

[8] The statement of evidence relied upon by the board was as follows: "Inmate was advised of his right to remain silent by the Chairman. The charges and body of the report were read to the inmate by the reporting officer. The inmate did plead not guilty to the charges.

"Informant(s) information was presented to the Board in executive session with the inmate and counsel not present. The informant(s) were judged as reliable, the informant(s) information was judged as reliable, and it was determined that disclosure of the information other than what was stated in the body of the disciplinary report would create a substantial risk of harm to the informant(s) and would threaten institutional security. A summary of the informant information was given and did in fact parallel the information contained in the body of the disciplinary report.

"Mr. Nelson claimed that he left his unit for only five to ten minutes to deliver his and another inmates laundry on the date of the B&E. This was supported by inmate Kenneth Courtney's testimony. Nelson denied being in the vicinity of the C.S.D. Building on the day of the B&E. C.O. Duval testified that Nelson was near the C.S.D. Building on the date and in fact was on the opposite west end of the Quad. C.O. Duval's testimony contradicted Nelson's statement of his whereabouts the day of the break. Nelson said he never went beyond unit 2-2 and C.O. Duval testified that Nelson crossed the Quad in front of the C.S.D. Building coming from the west side of the camp. Nelson said he was alone, while C.O. Duval stated that Nelson was in the company of Warren Mongo, an inmate in the facility.

"Reports indicating that there was in fact a B&E committed of the C.S.D. Office and that there were specific items taken also were introduced as evidence."

Again, the chairman summarized the executive session by repeating the disciplinary report. The written statement received by Goldman contained the same language the board used in Nelson's statement of the evidence.[9]

Based on Deputy Superintendent Holbrook's report, Goldman was found guilty of the offenses charged. The sanctions imposed were fifteen days in isolation, forfeiture of 100 days of good time, referral to the district attorney, and recommendation of reclassification. Goldman's appeal to the Commissioner was also denied. After serving the isolation time, Goldman was also reclassified and transferred to M.C.I., Walpole.[10]

We turn to the defendant's claims of error. We consider first the procedural issues raised by the defendant.

1. *Declaratory relief.* A petition for a writ of habeas corpus is appropriate where the petitioner alleges that he is entitled to immediate release. See *Beaton, petitioner,* 354 Mass. 670, 671-672 (1968); *Stearns, petitioner,* 343 Mass. 53, 57 (1961). Assuming that the plaintiffs are entitled to

---

[9] The statement of evidence relied upon by the board was as follows: "Inmate was advised of his right to remain silent by the Chairman. The charges and body of the report were read to the inmate by the reporting officer. The inmate did plead not guilty to the charges.

"Informant(s) information was presented to the Board in executive session with the inmate and counsel not present. The informant(s) were judged as reliable, the informant(s) information was judged as reliable, and it was determined that disclosure of the information other than what was stated in the body of the disciplinary report would create a substantial risk of harm to the informant(s) and would threaten institutional security.

"A summary of the informant information was given and it did in fact, parallel the information contained in the body of the disciplinary report.

"Mr. Goldman denied having any knowledge of the whereabouts of any firearms within Norfolk and denied possessing any firearm. Attorney Arthur Tacelli for the defendant made numerous objections to the procedures utilized regarding informant information and took exception to the Chairman's ruling on not allowing the reporting officer to answer questions concerning the informant(s) information."

[10] The district attorney took no action. Goldman is presently at M.C.I., Bridgewater. There is no explanation in the record as to why he has been sent to Bridgewater.

relief on the substantive issues of their complaint, Nelson and Goldman were not eligible for, nor were they seeking, immediate release from the custody of the Department of Correction.

Where, as here, the plaintiff fails to state a claim for the issuance of a writ of habeas corpus, the trial judge has discretion to dismiss the action. *Pina v. Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 665-666 (1978). The judge, however, is not obligated to do so. In *Pina, supra* at 666, we stated that where "a controversy exists as to the rights of the parties, the judge may construe a petition for a writ of habeas corpus as a claim for declaratory relief." See *Hennessy v. Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 850-852 (1982). We conclude that the judge properly treated the action as one seeking declaratory relief.

The judge did not err in denying the defendant's motion to dismiss the action for declaratory judgment. The Declaratory Judgment Act, G. L. c. 231A, provides relief in certain circumstances, including the "determination of any question of construction or validity . . ." of an administrative regulation.[11]   G. L. c. 231A, § 2, as amended by

---

[11] General Laws c. 231A, § 2, as amended by St. 1974, c. 630, § 1, also provides that the declaratory judgment procedure may be used "to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any . . . state agency or official which practices or procedures are alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth, or are in violation of rules or regulations promulgated under the authority of such laws, which violation has been consistently repeated." The defendant argues that, under the last phrase, declaratory relief cannot be given, absent a showing of repeated violations of the regulations. We view, however, the essential thrust of the plaintiffs' claim to be that the regulations themselves are deficient under the Federal Constitution. Even if we were to assume the defendant's interpretation of the statute and its claim to be correct, namely that the complaint challenges administrative practices only, we would conclude that the facts shown in this and the related cases (see note 2, *supra*) are sufficient to establish "consistent" and "repeated" violations by the Commissioner, pursuant to the Department's regulations, of the due process rights of these plaintiffs and others similarly situated. We note no claim by the Commissioner that the conduct of the board's hearings was other than in accord with prevailing practice.

St. 1974, c. 630, § 1. See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 845, 850-851 (1977); *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 296-297 (1975). The purpose of the Declaratory Judgment Act is to afford a plaintiff relief from uncertainty and insecurity with respect to rights, duties, status, and other legal relations. *Cf. Hadley* v. *Amherst,* 372 Mass. 46, 52 (1977). The statute "is to be liberally construed and administered." G. L. c. 231A, § 9. See *Jacobson* v. *Parks & Recreation Comm'n of Boston,* 345 Mass. 641, 645 (1963). Furthermore, the Department of Correction is subject to the first eight sections of the State Administrative Procedure Act. See G. L. c. 30A, § 1A. The Department of Correction is bound, therefore, by G. L. c. 30A, § 7, which provides that judicial review of any regulation may be had through an action for declaratory judgment. The plaintiffs contend that the regulations of the disciplinary board involving the use of informant information violate the Fourteenth Amendment to the United States Constitution. Declaratory judgment was an appropriate method of relief.[12]

2. *Federal due process requirements.* Our initial inquiry is whether the disciplinary hearings infringed upon or implicated a liberty interest of the plaintiffs protected by the Federal Constitution. "The Fourteenth Amendment pro-

---

[12] Because we conclude the plaintiffs present a proper claim for declaratory relief, we do not reach the question whether the validity of an adjudication by the board in an individual case must be challenged by an action in the nature of certiorari under G. L. c. 249, § 4. See *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. 292 (1983). Additionally, we see no value in terms of judicial economy or the administration of justice in determining the legal issues involved without deciding the rights of the plaintiffs in this and the other cases listed in note 2, *supra.*

We emphasize, however, that a complaint for declaratory relief does not give a prisoner a right to a hearing de novo in the Superior Court concerning the propriety of the conduct of his individual disciplinary hearing. See *Cepulonis* v. *Commissioner of Correction, supra* at 293. Our procedural holding here is limited to a determination that a complaint for declaratory relief is an appropriate way of testing the validity of regulations or the propriety of practices involving violations of rights, which are consistent and repeated in nature. G. L. c. 231A, § 2. See note 11, *supra.*

hibits any State from depriving a person of life, liberty or property without due process of law." *Meachum* v. *Fano*, 427 U.S. 215, 223 (1976). Where a State has created the right to good time credit and recognizes that its deprivation is a sanction authorized for misconduct, "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. . . . We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State." *Wolff* v. *McDonnell*, 418 U.S. 539, 557-558 (1974). See *Hewitt* v. *Helms*, 459 U.S. 460, 466-469 (1983).

Massachusetts provides that every prisoner "whose record of conduct shows that he has faithfully observed all the rules of his place of confinement" has a statutory right to have "the term of his imprisonment reduced by a deduction" of a determined period of time from his sentence. G. L. c. 127, §§ 129, 129C & 129D. Such good time credits may be forfeited "[i]f a prisoner violates any rule of his place of confinement." G. L. c. 127, § 129, first par. The loss of such statutory good time credits affects a State-created liberty interest protected by the due process guarantees of the United States Constitution. Thus, the judge was correct in ruling that the plaintiffs were entitled to the minimal due process requirements set forth in *Wolff* v. *McDonnell, supra.*

We turn next to whether the disciplinary hearings given the plaintiffs pursuant to the regulations of the Commissioner satisfied the due process requirements mandated by the United States Supreme Court. In *Wolff* v. *McDonnell, supra,* the Supreme Court held that due process requires that before a prisoner can be deprived of a State-created liberty interest he must be given advance written notice of the alleged violation of the disciplinary rules, he must be accorded an impartial tribunal, and must be given "a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff,*

*supra* at 563-564. See *Hewitt, supra* at 466 n.3. The Court also stated that an inmate should be allowed to call witnesses if to do so will "not be unduly hazardous to institutional safety or correctional goals." A disciplinary board, at its discretion, may refuse to call a witness requested by an inmate on the grounds of "irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff, supra* at 566.

The Federal due process clause, as interpreted in *Wolff, supra,* does not require that an inmate be allowed to test credibility through the confrontation and cross-examination of those furnishing evidence against him.[13] *Wolff, supra* at 567-569. In fact, the Supreme Court makes a distinction between the right to call witnesses, and confrontation and cross-examination. See *Baxter* v. *Palmigiano,* 425 U.S. 308, 321 (1976). Confrontation and cross-examination of adverse witnesses may create a high risk of reprisal in a prison system; hence, the Supreme Court has left the exercise of the right to confrontation and cross-examination in disciplinary hearings to the discretion of prison officials.[14]

Although *Wolff* left to prison administrators the initial determination of when the balancing of the inmate's interest in avoiding loss of good time against the needs of the prison requires cross-examination, "it did not address what other procedures might be constitutionally necessary as a check on the credibility of informants relied upon by committees making disciplinary decisions." *Kyle* v. *Hanberry,*

---

[13] The Supreme Court has settled that inmates do not have a constitutionally protected right to have counsel present at a disciplinary hearing. *Baxter* v. *Palmigiano,* 425 U.S. 308, 315 (1976). *Wolff, supra* at 570. The regulations of the Commissioner permit, however, an inmate to be represented by an attorney or a law student. While it is the inmate's responsibility to secure representation, the institution shall allow a telephone call for that purpose. 103 Code Mass. Regs. § 430.12 (1) (1978).

[14] It is arguable that the judge was in error in concluding that the board violated the plaintiffs' due process rights because "[t]he Board . . . arbitrarily denied the petitioners' the right to confront and cross-examine the informant(s) or to effectively cross-examine Holbrook." We need not reach this issue, however, as we dispose of the appeal on other grounds.

677 F.2d 1386, 1389 (11th Cir. 1982). Cf. *McLaughlin* v. *Hall,* 520 F.2d 382, 385 (1st Cir. 1975). *Wolff* indicated that prison administrators should devise regulations to insure that the procedures of a disciplinary board are adequate for it to conclude that any confidential information relied upon by it is reliable. *Langton* v. *Berman,* 667 F.2d 231, 235 (1st Cir. 1981). See *Wolff, supra* at 568.

The regulations adopted by the Commissioner provide that "[a]ll evidence considered by the disciplinary board shall be presented in the presence of the inmate except informant information which may be presented in accordance with the provisions of 103 CMR § 430.15 [1978]."[15] 103 Code Mass. Regs. § 430.14 (3) (1978). We reprint in the margin the State regulations on the procedures for the use of informant information and as to the required record of disciplinary proceedings.[16] The plaintiffs challenge the adequacy

---

[15] The requirement of presentation of evidence in the presence of the inmate exceeds the Federal due process requirements. See *Baxter* v. *Palmigiano,* 425 U.S. 308, 322-323, n.5 (1976) (board may make use of information presented after formal hearing).

[16] The language of 103 Code Mass. Regs. states:

"430.15: *Procedures for the Use of Informant Information*

"(1) In disciplinary cases involving informant information the disciplinary board may consider documentary evidence and/or testimony which is not presented in the presence of his representative only if after viewing and/or hearing such documentary evidence or testimony the board has:

"(a) Made a finding that disclosure of the documentary evidence or testimony to the inmate or his representative would create a substantial risk of harm to the informant, to another person, or to institutional security;

"(b) Made a finding that the informant and the information are reliable; and

"(c) Presented a summary of the informant information to the inmate and his representative to the extent that doing so will not create a substantial risk of disclosing the identity of the informant.

"(2) The presentation of a summary of the informant information to the inmate may be foregone [*sic*] in cases where disclosing the information in any greater detail than that which has been provided to the inmate in the disciplinary report itself, would create a substantial risk of disclosing the identity of the informant.

"(3) The disciplinary board may consider informant information and base the findings required in 103 CMR 430.15(1) on information which is

of these particular State regulations to protect their Federal due process rights.

In determining if these regulations are adequate to safeguard the Federal due process rights of prisoners, we recognize that the Supreme Court has held that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish*, 441 U.S. 520, 547 (1979). See *Hewitt* v. *Helms*, 459 U.S. 460, 472 (1983). Nonetheless, "[t]he touchstone of due process is protection of the individual against arbitrary action . . . ." *Wolff, supra* at 558. We turn to decisions of other Federal courts for guidance.[17]

---

limited to oral or written hearsay evidence. The disciplinary board shall not be required to interview the informant in person."

"430.17: *Record of Disciplinary Proceedings*

"(1) If a guilty finding is reached the disciplinary board shall prepare a written decision containing the following:

"(a) A description of the evidence relied upon by it in reaching the guilty finding;

"(b) A statement of the reasons for the sanctions imposed;

"(c) A notice of the right to appeal.

"This written decision shall be given to the inmate within two (2) weekdays of the close of the hearing.

"(2) The evidence relied upon for the guilty findings and the reasons for the sanction shall be set out in specific terms unless the hearing has involved use of informant information pursuant to 103 CMR 430.15 and such specificity would create a substantial risk of harm to the informant, another person or institutional security."

[17] The United States Court of Appeals for the First Circuit has "recognized the problem of accommodating institutional requirements to the need to afford some protection against arbitrary or vindictive actions by prison officials stemming from unreliable unidentified or even nonexistent informants." *Langton* v. *Berman*, 667 F.2d 231, 235 (1st Cir. 1981). See *McLaughlin* v. *Hall*, 520 F.2d 382, 384 (1st Cir. 1975). However, as recently as 1981, the First Circuit declined to impose its view of constitutionally required ground rules on the Massachusetts Department of Correction because it felt an insufficient time had elapsed between a disciplinary hearing in 1977, and its decision in 1975 reminding prison officials to take adequate precautions. *Langton, supra* at 235. The court apparently concluded that it ought to leave the implementation of these principles, as

The danger of using information provided by an inform-
ant who is protected by a shield of confidentiality, and not
subject to challenge by confrontation and cross-examination
to support allegations, is that an accuser may easily concoct
allegations of wrong-doing. *Kyle* v. *Hanberry,* 677 F.2d
1386, 1390 (11th Cir. 1982). The reliance by a disciplinary
board on the secondary information of a reporting officer
without any primary evidence of guilt being presented to
the board, is to compound the prospect for abuse. See *Fin-
ney* v. *Mabry,* 455 F. Supp. 756, 768-769 (E.D. Ark. 1978).
To rely on such secondary information is simply to "rubber-
stamp" the disciplinary report and to delegate the decision-
making to the reporting or investigating officer. *Finney,
supra* at 769.

*Wolff* intended a disciplinary hearing to be a genuine
fact-finding procedure to verify the truth of allegations of
wrong-doing. Clearly, a board may harbor valid concerns
about the safety of its informants and the institutions, but
the task of a disciplinary board is to make a bona fide
evaluation of the credibility and reliability of the evidence.

At least one Court of Appeals has held that mere incor-
poration of the disciplinary report and the investigator's
report into the statement of evidence relied upon by the
board is insufficient to insure that prison officials act fairly.
*Hayes* v. *Walker,* 555 F.2d 625, 630, 633 (7th Cir.), cert.
denied, 434 U.S. 959 (1977). A Federal judge also con-
cluded that "rote recitation of shorthand phrases" did not
fulfil the purposes specified in *Wolff,* and required the
statement of evidence to contain enough information to
withstand scrutiny. *Finney* v. *Mabry,* 455 F. Supp. 756,
776 (E.D. Ark. 1978). We believe that, where a discipli-
nary board seeks to impose sanctions as severe as the sanc-
tions in this case on the basis of hearsay information derived

a matter of first instance, to the officials of the Department of Correction.
Since we share the view of the First Circuit on the applicable principles,
and sufficient time has elapsed, we, as a State court, charged with the du-
ty of enforcing Federal law in our jurisdiction, feel no need for continued
restraint.

from an unidentified informant, minimum due process demands that the applicable regulations require more than the broad conclusory findings of possible hazard to potential witnesses and institutional security, stated by this board, under 103 Code Mass. Regs. § 430.15 (1978), in their summaries of Nelson's and Goldman's hearings.[18] Thus, we agree with the judge that the "disciplinary board must do more than reiterate the boiler plate language when its determination of guilty hinges on the information of unidentified informant(s), otherwise no effective monitoring of its acts is plausible."[19]

The judge held that the board must comply with the standards for the use of informant hearsay set out in *Helms* v. *Hewitt,* 655 F.2d 487 (3d Cir. 1981), rev'd on other grounds, 459 U.S. 460 (1983). In *Helms, supra* at 502, the Third Circuit followed the standard set forth by the First Circuit in *Gomes* v. *Travisono,* 510 F.2d 537 (1st Cir. 1974). In *Gomes, supra* at 540, the First Circuit stated that when a disciplinary board's determination is derived from informant information, "(1) the record must contain some underlying factual information from which the Board can reasonably conclude that the informant was credible or his information reliable; (2) the record must contain the informant's statement in language that is factual rather than conclusionary and must establish by its specificity that the informant spoke with personal knowledge of the matters

---

[18] The defendant has conceded that the statements provided "only summary reasons."

[19] Although the point has not been argued, we note that, in cases involving due process rights, it is arguable that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, *or is essential to a fair determination of a cause,* the privilege must give way" (emphasis supplied). *Roviaro* v. *United States,* 353 U.S. 53, 60-61 (1957). If the disciplinary board decides to withhold the necessary information as to an informant's credibility and reliability, it may be required to dismiss the disciplinary action. *Id.* at 61. See, however, *McCray* v. *Illinois,* 386 U.S. 300 (1967) (disclosure of informer's identity not required at preliminary hearing to determine adequacy of probable cause to arrest or search). See also *Commonwealth* v. *Johnson,* 365 Mass. 534, 544-546 (1974).

$\mathcal{S}$

contained in such statement." See *Smith* v. *Rabalais,* 659 F.2d 539, 546 (5th Cir. 1981); *Finney, supra* at 775-776. See generally H. Hoffman, Prisoners' Rights: Treatment of Prisoners and Post-Conviction Remedies at § 3-33(5) (1976).

The defendant contends that the *Helms* standard is not constitutionally required because the Supreme Court recently reversed the decision of the Third Circuit. See *Hewitt* v. *Helms,* 459 U.S. 460 (1983). In the alternative, the defendant argues that the standard was satisfied because, as directed by the regulations, the board expressly informed the inmates that the board had considered certain incidents of reliability and found both the informants and their information to be reliable.

In *Helms, supra,* the Third Circuit addressed two separate questions: What process is due an inmate in restrictive custody for administrative reasons when such segregation infringes upon a State-created liberty interest and what process is due an inmate to effect disciplinary detention? See *Helms, supra* at 498, 501. We note that the *Hewitt* Court reversed the Third Circuit only on the first issue of Federal due process surrounding administrative segregation. See *Hewitt* v. *Helms, supra* at 462. That portion of *Helms* setting forth the standard for use of informant information in disciplinary hearings was not affected by the Court's decision. Although the discussion of this point by the Court of Appeals in *Helms* appears to have been dictum, it represents a valid analysis of this aspect of prison disciplinary proceedings consistent with the position taken by other Federal courts. The standard of *Helms, supra,* and *Gomes, supra,* as to the treatment of information in a disciplinary hearing appears valid as a statement of the requirements implied in *Wolff.* The reasoning of the Courts of Appeals for the First and Third Circuits is consistent with that of the Court of Appeals for the Eleventh Circuit in *Kyle* v. *Hanberry, supra.* We consider the analysis of these courts persuasive.

We conclude that the judge was correct in applying this standard.[20]

We do not agree with the defendant that it is sufficient to satisfy the *Helms* standard if the inmate is told that the board considered the credibility or reliability of the informant and found the information reliable. Both the disciplinary report and the statement of the board indicate that their sources were considered reliable, but neither explains why. See *Kyle* v. *Hanberry*, 677 F.2d 1386, 1390 (11th Cir. 1982). For the purposes of judicial review, the record established by the board must contain some facts from which a court can reasonably conclude that the board inquired and found the informants and their information to be reliable. The record here is not sufficient to satisfy the standard we have applied.

We turn now to the question of the appropriate relief for violation of the prisoners' minimal due process rights. It is clear that the forfeiture of good time credits is a liberty interest protected by the Fourteenth Amendment. The judge ordered the restoration of the prisoners' good time credits. However, the judge went further and entered judgments ordering the return of the prisoners to M.C.I., Norfolk. This relief was based on the view of the judge that the plaintiffs' transfers to M.C.I., Walpole, were a direct result of the board's recommendation of reclassification as a punishment for violation of State regulations. As the product of constitutionally invalid disciplinary hearings, the trial judge felt the transfers to M.C.I., Walpole, were tainted by the violations of the plaintiffs' Federal due process rights. Cf. H.B. Kerper & J. Kerper, Legal Rights of the Convicted 447 (1974).

---

[20] We observe that the First Circuit Court of Appeals reminded State prison officials to take adequate precautions in 1975. See note 17, *supra*. Six months prior to *McLaughlin, supra,* the First Circuit had set out the standards we have applied today. See *Gomes, supra.* Although *Gomes* involved Rhode Island prisoners, the defendant had adequate time to acquaint himself with the Federal standard for the use of informant information and to incorporate such a standard into the Massachusetts regulations involving disciplinary hearings.

Although the judge's view of the transfers as the direct consequence of the violation of the prisoners' Federal due process rights at their disciplinary hearings is based on logic, we note that the United States Supreme Court has held that prison regulations dealing with reclassification do not impose substantive standards on the decision to transfer an inmate. Transfers, disciplinary or administrative, are at the discretion of the Commissioner. *Meachum* v. *Fano*, 427 U.S. 215, 228 (1976). *Montanye* v. *Haymes*, 427 U.S. 236, 243 (1976). Cf. *Olim* v. *Wakinekona*, 461 U.S. 238 (1983). Since a prisoner has no right or expectation under State law that he will not be transferred except for misbehavior or the occurrence of some specified event, there is no liberty interest to which due process rights attach and which can be infringed by transfer. See *Daigle* v. *Hall*, 564 F.2d 884, 885-886 (1st Cir. 1977); *Four Certain Unnamed Inmates of Mass. Correctional Inst. at Walpole* v. *Hall*, 550 F.2d 1291 (1st Cir. 1977). Cf. *McDonald* v. *Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979).

We conclude that, as matter of Federal law, the judge erred in ordering the return of the plaintiffs to M.C.I., Norfolk.[21] Even if we were at liberty to hold otherwise, it would be an exercise in futility because an inmate "may be transferred at the whim of the Commissioner." *Four Certain Unnamed Inmates of Mass. Correctional Inst. at Walpole* v. *Hall, supra* at 1292. If the plaintiffs were returned to M.C.I., Norfolk, by judicial order, the Commissioner could remove them to M.C.I., Walpole, by administrative order. See G. L. c. 127, § 97.

To the extent the judge treated the petition as a complaint for declaratory relief, the judge should have declared the rights of the parties and ordered relief. However, in his rulings and findings, the trial judge merely "ordered that judg-

---

[21] There is no claim here of a violation of applicable State regulatory procedures on transfers or of a violation of the minimal due process standards relative to administrative transfers where State regulations create a liberty interest. See *Hewitt* v. *Helms, supra*.

ment [be] enter[ed] ordering" relief. We reverse the judgments and remand the cases for entry of judgments declaring the rights of the parties consistent with our opinion.

We note, also, that, while the order of the judge that the good time credits of these plaintiffs be restored is appropriate on this record, it should not be a bar to the Commissioner in ordering a new disciplinary hearing, pursuant to revised regulations in accordance with the requirements of this opinion.[22] Put otherwise, the plaintiffs are entitled, at most, by analogy, to a "new trial," free of error. Hence, on remand, the judge should order, if requested, a new hearing by a disciplinary board.[23]

*Judgments reversed.*

---

[22] See *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole, supra* at 418.

[23] It would be within the appropriate discretion of the judge to require the hearing, if any, to be conducted before a newly constituted board to ensure impartiality. Also, the isolation time already served must be credited to the plaintiffs as against sanctions imposed, if any, as a result of such a new hearing.