Butler, J.
INTRODUCTION
The plaintiff, an inmate at North Central Correctional Institution in Gardner, Mass., brings this action in the nature of certiorari pursuant to G.L.c. 249, §4, alleging violations of his due process rights during a disciplinary proceeding in which he was found guiliy of using heroin and of introducing heroin into the prison. He also brings a claim for damages under 42 U.S.C. §1983.[2] He seeks to have the disciplinary convictions expunged from his record and to have 150 days of good time credits and visiting privileges restored. Additionally, the plaintiff seeks to be returned to NCCI-Gardner from MCI-Norfolk, claiming that his reclassification was illegal.[3]
The defendants have moved to dismiss, or alternatively for summary judgment. For the reasons which follow, the defendants’ motion is DENIED in part and ALLOWED in part.[4]
BACKGROUND
The plaintiff received two separate disciplinary reports. The first, D-Report 96-0641, which was issued on July 20, 1996, charged him with having a positive drug urine test. The plaintiff signed a form admitting guilt on this charge and waiving the right to have an outside confirmatory test. The second, D-Report 96-0643, charged him with introducing drugs into the prison. Disciplinary hearings on both reports were held on August 8, 1996, resulting in guilty findings by the hearing officer, Charles Ryan. The hearing officer sentenced the plaintiff to thirteen weeks loss of visits on D-report 96-0641, and ten days detention, twenfysix weeks loss of visits, recommended reclassification, and recommended 150 days loss of good time on D-report 96-0643. Subsequently, the Commissioner of the Department of Correction, Larry Dubois, forfeited 150 days of good time credits.
The plaintiff filed an administrative appeal of his convictions with Lynn Bissonette, Superintendent of NCCI-Gardner, who denied the appeal.
The plaintiff alleges numerous violations of his due process rights during the disciplinary process. Specifically, he alleges the following actions violated his rights:
D-report 96-0643:
—The denial of the plaintiffs request for informant information.
—The denial of the plaintiffs request for tape recordings of telephone conversations allegedly implicating him in a plot to introduce drugs into the prison.
—The denial of the plaintiffs request for copies of other inmates’ urine test results on which the hearing officer relied.
—The denial of requested witnesses.
—The refusal of the hearing officer to consider certain affidavits offered by the plaintiff at his disciplinary hearing.
*518 —The failure to view a videotape of the visiting room that recorded the visit during which the plaintiff allegedly received drugs from his visitor.
—The failure to establish the reliability of informants on whose information the guilty findings were partially based.
D-Report 96-0641:
—The refusal of the hearing officer to allow the plaintiff to withdraw his guilty plea on D-report 96-0641 and to withdraw his waiver of an outside confirmatory urine test.
—The denial of a requested witness.
DISCUSSION
I.Claimed Due Process Violations A. D-Report 96-0643
1. Denial of request for informant information
The hearing officer made a specific finding that disclosure of the informant information would identify the informants, and that this would lead to retaliation. The decision to deny the informant information was made pursuant to 103 C.M.R. 430.15(3), which allows the hearing officer to forego presenting a summary of informant information to the inmate at the hearing “where disclosure of the information in any greater detail than that which is contained in the disciplinary report itself would create a substantial risk of disclosing the identity of the informant.” Thus, such denial did not violate the plaintiffs due process rights.
2.Denial of request for tape recordings of phone conversations
The plaintiff was denied access to tapes of phone conversations of other inmates which allegedly implicated the plaintiff in a plan to introduce drugs into the prison. Although the hearing record contains no reason for the denial of these tapes, the court agrees with the defendants that a valid reason would be to prevent the plaintiff from learning the identity of those inmates in order to avoid any retaliation by the plaintiff for the other inmates’ “loose lips.”
3.Denial of request for results of other inmates’ dirty urine tests
The written results of diriy urine tests of other inmates, upon which the guilty finding was partially based according to the record of the disciplinary hearing, were not produced at the hearing. In their memorandum the defendants state that the plaintiffs request for “all physical evidence” was not specific enough to notify them that that the request encompassed the urine results of other inmates. This explanation misconstrues the plaintiffs claim as regards the urine test results. 103 C.M.R. 430.14(2) states, “All evidence considered by the hearing officer shall be presented in the presence of the inmate except informant information ...” The plaintiff is not claiming he was denied access to these results, but that because they were not produced at the hearing, they should not have been relied upon. Nonetheless, the hearing officer heard testimony as to the positive urine results of other inmates. As the hearing officer was not bound by the rules of evidence, see 103 C.M.R. 430.13(3), it was not improper to rely on the hearsay testimony regarding the urine test results. The court agrees with the defendant that the paper record of the results would have added nothing to the plaintiffs ability to defend against the charges.
4. Denial of requested witnesses
The hearing officer denied two witnesses requested by the plaintiff on the day of the hearing. The request was submitted in the form of a “Motion to Amend Witnesses.” The reason for the denial, written by the hearing officer on the motion itself, was that the plaintiff had failed to request the witnesses in a timely manner pursuant to 103 C.M.R. 430 11(5). That provision clearly gives the hearing officer the discretion to deny requested witnesses if the disciplinary defendant does not submit a witness request form within 24 hours of receiving it.
5. Refusal to consider affidavits
The hearing officer wrote that the affidavits of two inmates, which purportedly supported the plaintiffs claim that the informants on whom the hearing officer relied were offered deals in return for implicating the plaintiff, “should not be considered since they were not properly procedurally done.” The defendants explain in their memorandum that the plaintiff had failed to comply with the rule requiring him to provide a summary of witness testimony before the hearing. 103 C.M.R. 430.14(4)(e) specifically lists this as a valid reason for refusing to consider the affidavits, and thus the court cannot say the hearing officer’s refusal to consider the affidavits was improper.
6.Failure to view videotape
The hearing officer declined to view a videotape which recorded the visit of one Linda Martinez with the plaintiff. Nonetheless, the hearing officer’s “Statement of Evidence Relied Upon to Support Findings” indicates that the videotape’s depiction of the plaintiff and Martinez exchanging a kiss was what he relied upon as the “method of drug introduction.” A witness testified that the videotape “proved inconclusive as far as confirming drug introduction due to poor angle of camera.”
An inmate must be afforded the minimal due process requirements mandated by the United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974). Nelson v. Commissioner of Correction, 390 Mass. 379, 389 (1983). These include the right to call witnesses and present documentaiy evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safely or correctional goals. Id. at 566. The prison officials have the burden of proof to show why their refusal to allow the inmate to present documentary evidence was not ar *519 bitraiy or capricious. Ponte v. Real, 471 U.S. 491, 499-500 (1985).
Here, the defendants’ offered reason for the hearing officer’s failure to view the videotape was that the reporting officer “acknowledged at the hearing that the video was inconclusive as far as confirming drug introduction and was useful only to confirm that Par2yck and Linda Martinez kissed."
Inasmuch as the kiss between the plaintiff and his visitor is the theory upon which the hearing officer found that the plaintiff introduced drugs into the prison, the hearing officer should have viewed the videotape himself. The witness’s statement that the tape was inconclusive was tantamount to a finding that drugs could have been passed. It was the hearing officer’s obligation to find such facts. In effect, the hearing officer delegated his fact-finding function, as it was for him to decide whether the videotape was inconclusive or, as the plaintiff contends, establishes that no drugs could have been passed during the kiss. Under the specific circumstances of this case, the failure to view the videotape violated the plaintiffs due process.[5]
7. Reliance on unreliable informant information
The plaintiff claims that the hearing officer improperly relied in part for his finding of guilt on unreliable informant information.
In Nelson v. Commissioner of Correction, 390 Mass. 379 (1983), the Supreme Judicial Court held that when informant information forms the basis for a prison board’s finding of guifiy in a disciplinary proceeding, due process requires that (1) the record must contain some underlying factual information from which the Board can reasonably conclude that the informant was credible or his information reliable; and (2) the record must contain the informant’s statement in language that is factual rather than conclusory and must establish by its specificity that the informant spoke with personal knowledge of the matters contained in such statement. See id. at 395.
In this case, the informant information summary states: “Hearing officer met in executive session with IPS Officer McCaw to review informant information. The information gathered here assisted Hearing Officer reach a decision of guilt for Parzyck. Risk factors preclude identifying these two individuals by name since retaliation may occur. # 1 informant has provided like, similar and accurate information in the past on several occasions while #2 has not done so at all. The info #1 gave was of same type and magnitude as present event. Neither one of these individuals had any known reason to retaliate against the accused. No self-serving motives or special favors from the administration were granted for information provided. Both of these two informants had personal knowledge of drug transaction and introduction to NCCI going down and Parzyck’s involvement therein. Each informant independently corroborated Parzyck’s participation in this illegal scheme. Also corroborating Parzyck’s drug activities is: (1) visiting room video (2) audio tapes (telephone) and (3) positive urine results obtained from Parzyck.” The hearing report indicates that the reporting staff person testified that one of the informants gave an address, which turned out to be that of the plaintiffs daughter, and that telephone conversations between the plaintiff and his daughter were monitored and that there was discussion about a “package” and about a payment of $100 “to girl for her part.” The reporting staff person also testified that the second informant came forward and reported that drugs had been passed to the plaintiff during the Martinez visit, and that this was corroborated by urine tests of the plaintiff “and some of his known associates.”
The record adequately establishes the reliability of the informants under the Nelson standard.
B. D-Report 96-0641
1. Failure to allow withdrawal of guilty plea and waiver of confirmatory urine test
The guilty finding on this D-report, according to hearing record, was based on the plaintiffs admission of guilt, as evidenced by his signature on a form entitled “Notification of Urine Results.” This form states, “I do not contest the positive results of this test ... I waive the right to a confirmation test and admit to sufficient facts of guilt.”
The plaintiff claims that the hearing officer wrongly refused to allow him to withdraw a guilty plea on the charge of having dirty urine and to withdraw the waiver of his right to have an outside confirmatory test. He claims that his waiver was procured through duress. The hearing officer relied on the testimony of the reporting officer that the plaintiff was “in no way coerced or threatened into signing this waiver.”
The guilty finding of the hearing officer on this report is adequately supported by the record.
2. Denial of witness
The plaintiff requested as a witness inmate Neil Roberts, who the plaintiff claimed would testify that he was told his own dirty urine test would be dropped in return for cooperation in the investigation against the plaintiff. The request was denied by the disciplinary officer, who wrote as the reason for denial that “Inmate Roberts did not have anything to do with YOUR positive urinalysis results.”
The court cannot say that the denial of this witness was improper. The only charge on this D-report was that the plaintiff tested positive for drugs. “Relevance” is clearly stated in 103 C.M.R. 430.14(4)(a) as a proper grounds for denial of a requested witness. The denial of this witness was not a due process violation.
*520 II. 42 U.S.C. §1983 Claim
The defendants move for dismissal of this claim on the grounds that they are entitled to qualified immunity from liability for any violations of the plaintiffs rights. The court agrees. 103 C.M.R. 430.14(4) states that an inmate “shall be allowed to call and question witnesses in his defense, or to present other evidence, when permitting him to do so will not be unduly hazardous to personal safety, institutional safety or correctional goals. The factors that the hearing officer may consider when ruling on an inmate’s request to call witnesses ... or offer of other documentary or physical evidence shall include, but shall not be limited to, the following: (a) Relevance.” This language makes clear that a hearing officer has broad discretion when deciding on an inmate’s request for witnesses and evidence. As the hearing officer was performing a discretionary function when he refused to view the videotape, he is protected from liability by the doctrine of qualified immunity. See Matthews v. Rakicy, 38 Mass.App.Ct. 490, 493 (1995) (“Where public officials are performing a discretionary function, they may be shielded from civil liability in a §1983 action by the doctrine of qualified immunity.”).
The plaintiff has not articulated facts that would support a claim against any of the other named defendants. The defendant Lynn Bissonette merely denied the plaintiffs appeal of the hearing officer’s decision finding him guilty of the disciplinary infractions. This is a discretionary function, as 103 C.M.R. 430.18(2) states: “The Superintendent . . . acting as the appellate authority may sustain the finding and sanction of the hearing officer, order a rehearing, reduce the designation from ‘major’ to ‘minor’, reduce or suspend the sanction, dismiss the charges, or take whatever remedial action he deems appropriate.”
The defendant Larry Dubois forfeited the plaintiffs 150 days of good time on the recommendation of the hearing officer, and in no way participated in the hearing process which underlies the plaintiffs claims. In any event, the good time will be restored pursuant to this decision, and so no deprivation has occurred.
The defendant has not stated any facts which amount to a deprivation of his rights by the defendants Richard Curtis, Edward Hammond, or Mark McCaw.[6]
III. Plaintiffs Other Motions
The plaintiff filed a number of other motions in connection with this case. His motion for the court to view the videotape of the visiting room is denied for reasons set forth in footnote 5, supra. It is not necessary for the court to address his motion to compel discovery and his motion to expand time to expand the record, as the court has ruled in the plaintiffs favor on the record before it, based on the hearing officer’s due process violations. Finally, the court denies the plaintiffs motion for sanctions and contempt against the defendants for their alleged tampering with the audio cassette tapes of the disciplinary hearings.
ORDER
Accordingly, the court ORDERS that the defendants’ motion to dismiss or, in the alternative, for summary judgment, is ALLOWED as to the claims under 42 U.S.C. §1983, and DENIED as to the claim in the nature of certiorari seeking review of the disciplinary proceedings. The court further ORDERS that the plaintiff s good-time credits be restored unless and until such time that a new hearing is held and a guilty finding is made following a disciplinary hearing that fully comports with the plaintiffs due process rights.[7]

 The plaintiff makes no allegations of “threats, intimidation, or coercion” to support a claim for damages under the Massachusetts Civil Rights Act. See G.L.c. 12, §§11H & 11I.
The plaintiff also claims a'double jeopardy violation inasmuch as he received several sanctions for his disciplinary violations. Double jeopardy principles are not involved in this case. See, McGuinness v. Commonwealth, 424 Mass. 1004 (1997) (Rescript) and Commonwealth v. Sneed, 3 Mass.App.Ct. 33, 34-35 (1975).
Additionally, the plaintiff claims a violation of his Eighth Amendment rights. The basis of this claim is unclear to the court from the complaint. Nothing alleged in the complaint rises to the level of cruel and unusual punishment.

 The plaintiff also seeks declaratory and injunctive relief. These forms of relief are inappropriate, as an inmate challenging a prison disciplinary proceeding must proceed by action in the nature of certiorari. See Pidge v. Superintendent Massachusetts Correc. Inst. Cedar Junction, 32 Mass.App.Ct. 14, 17 (1992).

 The plaintiff has also filed several other motions in this case. The court discusses them in part III of this decision.

 The plaintiff has also filed a motion for the court to view the videotape. It is not the court’s function to find facts, therefore, the court denies this motion.

 It is difficult to ascertain from the complaint exactly what actions of these defendants form the basis for the claims against them. Each was in one way or another involved in the disciplinary process, but the court will not impute due process violations stemming from the hearing officer’s errors to them.

 As for the plaintiffs transfer and reclassification, both are within the discretion of prison officials, and thus no liberty interest of the plaintiff is implicated. See Dougan v. Commissioner of Correction, 34 Mass.App.Ct. 147, 149 (1993); Harris v. Commissioner of Correction, 409 Mass. 472, 477-78 (1991). See also Hastings v. Commissioner of Correction, 424 Mass. 46, 50-52 (1997) (transfers of prisoners do not implicate liberty interest under either federal or state constitution); Nelson v. Commissioner of Correction, 390 Mass. 379, 397 (1983) (“Since a prisoner has no right or expectation under State law that he will not be transferred except for misbehavior or the occurrence of some specified event, there is no liberty interest to which due process rights attach and which can be infringed by transfer.”). Therefore, the court takes no action on the plaintiffs prayers for relief involving these matters.