STACEY HARRIS *vs.* COMMISSIONER OF CORRECTION.

Suffolk. December 6, 1990. - March 6, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Imprisonment*, Reclassification hearing, Transfer of prisoner, Access to courts. *Due Process of Law*, Prison classification proceedings. *Injunction. Practice, Civil*, Injunction, Hearing.

The hearing accorded a State prisoner before his transfer to an out-of-State Federal prison did not violate his right to due process or any State statutory provisions, where the transfer implicated no liberty interest in the locus of his incarceration under either the Federal constitution or any State statute or regulation. [476-478]

Standards set forth in 103 Code Mass. Regs. §§ 430.14 (4) & 430.15 (1987), governing the admission of informant information and an inmate's right to call witnesses in State prison disciplinary hearings, did not apply to an inmate classification hearing conducted under 103 Code Mass. Regs. § 420 (1987). [478-479]

In a proceeding by a State prisoner for injunctive relief the record did not support a judgment based on the judge's ruling that a transfer to an out-of-State Federal prison had denied the plaintiff his right of access to the courts. [479-480]

CIVIL ACTION commenced in the Superior Court Department on April 12, 1989.

The case was heard by *Walter E. Steele*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David J. Rentsch* for the Commissioner of Correction.

*Willie J. Davis* for the plaintiff.

ABRAMS, J. The plaintiff, an inmate at the Massachusetts Correctional Institution at Bridgewater, was transferred after a classification hearing to a Federal prison in Memphis, Tennessee. This case concerns the sufficiency of that hearing under both the Federal due process clause and State regula-

tions. In addition, the plaintiff asserts that the transfer denied him access to the courts because the Federal facility does not contain adequate Massachusetts legal materials. The judge granted the plaintiff injunctive relief and entered a judgment ordering that within thirty days the plaintiff be returned from Tennessee to any correctional institution within the Commonwealth. The defendant, the Commissioner of Correction (commissioner), appeals. We reverse the judgment.

. After the plaintiff was transferred to Tennessee, he filed a complaint against the commissioner in the Superior Court asking for declaratory and injunctive relief. The judge held a hearing, but it is not clear whether that hearing was a hearing on a motion for preliminary injunctive relief or a hearing on the request for a permanent injunction and on the merits of the controversy. The hearing was not stenographically or electronically recorded, nor is there a statement of agreed facts. On May 31, 1989, the judge entered a judgment ordering the commissioner to return the plaintiff to Massachusetts within thirty days.[1] The judgment does not bear any sign that the court approved its form as required by Mass. R. Civ. P. 58 (a) (2), as amended, 371 Mass. 908 (1977).[2] Accompanying the judgment is the judge's "memorandum and order on plaintiff's motion for injunctive relief." The memorandum adopts nearly verbatim the facts alleged in the plaintiff's complaint and does not address or acknowledge any of the legal arguments put forth in the commissioner's opposition memorandum. Neither the judgment nor the

---

[1] It appears that notice of this decision was not sent to the commissioner until June 7, 1989.

[2] Rule 58 (a) of the Massachusetts Rules of Civil Procedure allows a clerk to "prepare, sign, and enter judgment without awaiting any direction by the court," only if the judgment is on a general verdict of a jury, is for a recovery of "a certain sum or costs," or denies the relief requested. If the decision of the court grants any other relief — such as the injunctive relief ordered here — then "the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it."

memorandum states whether the relief granted was a prelim-
inary or permanent injunction.[3]

We assume that the judgment was a final judgment for a
permanent injunction, even though it is not so designated.
Nowhere in his memorandum does the judge consider or bal-
ance the factors to be considered before issuing a preliminary
injunction. See *Packaging Indus. Group, Inc.* v. *Cheney*, 380
Mass. 609, 617 (1980) (when asked to grant a preliminary
injunction, a judge must balance the risk of irreparable harm
to the moving party, and the likelihood that the moving party
will succeed on the merits against the risk of irreparable
harm to the opposing party). See also *Commonwealth* v.
*Mass. CRINC*, 392 Mass. 79, 89-90 (1984) (Commonwealth
is not required to demonstrate irreparable harm where oppos-
ing party's activities may adversely· affect the public inter-
est); *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983) (in
cases in which a town is a party, a judge also may weigh the
risk of harm to the public interest in considering a prelimi-
nary injunction motion). The judge did not do an analysis
consistent with any of the foregoing factors.

A judgment ordering a permanent injunction might not
necessarily have been inappropriate at this stage of the pro-
ceedings. Massachusetts Rule of Civil Procedure 65 (b) (2),
365 Mass. 832 (1974), allows a judge to consolidate a trial of
the action on the merits with a hearing on an application for
a preliminary injunction. It is reversible error, however, "to
order consolidation in such a manner as to deprive a party of

---

[3]On June 26, 1989, the commissioner moved for a reconsideration of the
order and a stay of the order pending reconsideration. The judge denied
both motions on July 7, 1989. On July 28, 1989, the plaintiff, who still
remained in the Federal prison in Tennessee, moved for contempt. On Au-
gust 2, 1989, the commissioner returned the plaintiff to the Common-
wealth. The commissioner should have returned the plaintiff within the
thirty-day period set by the judge or, at the latest, immediately after the
judge denied the motions. The commissioner could have sought a stay of
the injunction from a single justice of the Appeals Court. See G. L. c. 231,
§ 118. He did not do so. Although the plaintiff does not raise this issue in
his brief, the commissioner clearly was without authority to postpone his
compliance with the order.

'clear and unambiguous notice' and 'a full opportunity' to present its case." *Cheney, supra* at 616-617 n.10, quoting *Pughsley* v. *3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972). The state of the record does not let us know whether the commissioner received these protections. See *Metropolitan Dist. Comm'n* v. *Codex Corp.*, 395 Mass. 522, 524 (1985). Moreover, even assuming sufficient notice and opportunity to be heard, a hearing resulting in a final judgment "should be conducted in circumstances that can produce a clear indication of the factual basis for the judge's decision. Written stipulations of fact or uncontroverted affidavits (assuming adequate notice) could provide that factual basis, thus making the hearing on the merits substantially similar to a hearing on a motion for summary judgment, but, generally speaking, we would expect the proceeding [on the merits] to be transcribed by a stenographer or recorded electronically." *Id.* at 524-525. Without a transcript of the hearing or some record of the proceedings, we have no way of knowing the evidence on which the judge based his findings of fact and rulings of law. Therefore, we must vacate his judgment unless the facts conceded by the commissioner and the uncontroverted documentary evidence establish the correctness of the rulings. Cf. *id.* at 525. The correctness of the judgment is not so established.

The facts conceded by the commissioner and the uncontroverted documentary evidence are as follows. The plaintiff was convicted of murder in the second degree on December 18, 1987, and sentenced to life imprisonment.[4] The defendant was committed to the Massachusetts Correctional Institution at Cedar Junction (MCI-Cedar Junction), and later transferred to the segregation unit at the Old Colony Correction Center in Bridgewater. On January 23, 1989, the deputy superintendent sent the plaintiff a notice of classification hearing which stated that "[a]s a result of an investigation, it has

---

[4]Because the plaintiff is awaiting a new trial, we address the issues which may recur prior to his retrial. We reversed that conviction. See *Commonwealth* v. *Harris, ante* 461 (1991).

been determined that you were second in command of a group which was involved in the introduction and distribution of narcotics, racial conflict and planned violence against other inmates at MCI-Cedar Junction."

At the subsequent hearing before a classification board, Sergeant Edward McGonagle of MCI-Cedar Junction testified about information received from two informants regarding the plaintiff's participation in a narcotics distribution operation within the prison. The board found the informants to be reliable and their information credible. Although the plaintiff's attorney represented him at the hearing, McGonagle presented this information while the board was in executive session, out of the presence of both the attorney and the plaintiff. The board provided them with a summary of the testimony afterward. The plaintiff's attorney then cross-examined McGonagle. The cross-examination revealed that the informants provided their information to another officer, not to McGonagle, and that McGonagle had never personally received any information from these informants.

The plaintiff was allowed to make a presentation to the board denying the allegations. He then asked for permission to present testimony from his own witnesses. The board denied the request. After the hearing, the board advised the plaintiff of its decision to recommend to the commissioner that the plaintiff be transferred to a Federal facility. The plaintiff appealed pursuant to 103 Code Mass. Regs. § 420.10 (c) (1987). The commissioner approved the board's recommendation on March 22, 1989, and thereafter transferred the plaintiff in accordance with the decision.

On appeal, the commissioner claims that the judge erred in ruling that the Federal due process clause accords the plaintiff greater procedural protections than he was granted. He also asserts that the hearing complied with the State regulations, and that the transfer did not deprive the plaintiff of access to the courts.

1. *Due process.* It is well settled that the procedural protections of the Federal due process clause do not attach unless there is an identifiable interest in life, liberty, or property

as contemplated by the language of the Fourteenth Amendment. See *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). With regard to intrastate prison transfers, the Supreme Court has held that convicted inmates possess no liberty interest in remaining in any particular State prison facility. *Meachum* v. *Fano*, 427 U.S. 215 (1976). See *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 397 (1983). "The conviction has sufficiently extinguished the [plaintiff's] liberty interest to empower the State to confine him in *any* of its prisons." *Meachum, supra* at 224. Therefore, in *Meachum* no due process claim arose out of a transfer of prisoners to a maximum security facility without an adequate fact-finding hearing. See *Nelson, supra* at 397. The result was no different when the transfer was to a prison in another State, see *Olim* v. *Wakinekona*, 461 U.S. 238 (1983), or when the transfer was for disciplinary, rather than administrative, purposes, see *Montanye* v. *Haymes*, 427 U.S. 236 (1976); *Nelson, supra* at 397. There is no basis for a distinction between transfers to another State's prisons and transfers, such as the one at issue here, from a State to an out-of-State Federal facility. See *Sisbarro* v. *Warden, Mass. State Penitentiary*, 592 F.2d 1 (1st Cir.), cert. denied, 444 U.S. 489 (1979).

A different result, however, may obtain where State law confers an entitlement on a prisoner that is not defeasible unless the prisoner engages in misconduct. For example, in *Wolff* v. *McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that a prisoner was entitled to procedural protection against the deprivation of good time credits which State law guaranteed him unless he was found guilty of serious misbehavior. The statute at issue in the case at bar, G. L. c. 127, § 97A, does not confer any such entitlement on Massachusetts prisoners.[5] It merely authorizes the commissioner

---

[5]General Laws c. 127, § 97A (1988 ed.), provides: "The commissioner may, with the approval of the appropriate officials of the federal government, transfer any prisoner sentenced to state prison to any available or appropriate correctional institution maintained and supervised by the federal government within the confines of continental United States. . . . Pris-

to transfer prisoners to Federal facilities, and ensures that the terms of a prisoner's sentence and the discharge and parole provisions will not be affected by the transfer. Neither this statute nor any other provision of State law guarantees that prisoners will not be transferred unless they misbehave.[6]

Because the transfer to an out-of-state Federal prison did not implicate any liberty interest either under the Federal Constitution[7] or as created by State statute or regulation, the hearing accorded the plaintiff did not violate his Federal due process or his statutory rights.

2. *The Massachusetts regulations.* The regulations under which the board conducted the classification hearing do not provide the plaintiff with the procedural protections he claims. The regulations give the inmate only the right to forty-eight hours' advance notice of the hearing, the right to be represented by an attorney, the right to make a presentation to the board, and the right to appeal. See 103 Code Mass. Regs. § 420.08 (6) and § 420.09 (3) (1987). The plaintiff does not deny that he was granted these rights.

The plaintiff nevertheless contends that the commissioner was required to comply with the standards governing the admission of informant information set forth in 103 Code Mass. Regs. § 430.15 (1987). However, those standards only apply to *disciplinary* hearings under 103 Code Mass. Regs. §§ 430.00 (1987). The plaintiff's hearing was a *classification*

---

oners so removed shall be subject to the terms of their original sentences to the state prison and to the provisions of law governing discharge and parole from the correctional institutions of the commonwealth."

[6]For this reason, the judge's reliance on *Nelson, supra,* and *Lamoureux v. Superintendent, Mass. Correctional Inst., Walpole,* 390 Mass. 409 (1983), is misplaced. In those cases, we ruled that a prison disciplinary hearing which can result in the loss of good time credits must comport with due process requirements. The cases clearly are distinguishable. Unlike the asserted interest in not being transferred out of state, the retention of good time credits is a constitutionally cognizable liberty interest because it is guaranteed under State law unless the "prisoner violates any rule of his place of confinement." G. L. c. 127, § 129 (1988 ed.).

[7]The plaintiff does not argue, and therefore we do not consider, whether the scope of his liberty interest may be broader under the Massachusetts Declaration of Rights than under the Federal Constitution.

hearing under 103 Code Mass. Regs. §§ 420.00 (1987). Although, as the plaintiff points out, both kinds of hearings may result from disciplinary infractions, the regulations are clear on their face that adherence to the informant information standards is required in disciplinary hearings only.[8] There is no basis on the record before us to conclude that the classification proceeding was a pretext. The judge did not so find or rule. Therefore, the commissioner was not required to meet the standards for informant information set forth in 103 Code Mass. Regs. § 430.15 (1987).

The plaintiff also objects to the board's denial of his request to call witnesses. Again, however, although the regulations provide inmates subject to a disciplinary hearing with a qualified right to call witnesses, see 103 Code Mass. Regs. § 430.14 (4) (1987), no corresponding right is accorded to inmates in classification hearings. Therefore, the regulations at issue do not provide a basis for the injunctive relief granted.

3. *Access to the courts.* Finally, the judge found that "[t]he plaintiff will be in a significantly better position to assist his lawyer in the preparation of his appeal, if he is returned to Massachusetts," and therefore ruled that the transfer to Tennessee denied the plaintiff his constitutional right of access to the courts. Even if this finding is supported by the evidence before the judge, it does not adequately address the legal issue raised by a claim of denial of access to the courts.

In *Bounds* v. *Smith,* 430 U.S. 817 (1977), the Supreme Court set forth the nature of the right of access to the courts. Prison authorities, according to the Court, are required "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law" (emphasis added). *Id.* at 828. Therefore, even assuming that the plaintiff had no access to a law library with Massachusetts

---

[8]The plaintiff does not argue that the differing standards violate equal protection or other constitutional requirements.

legal materials, he still may not have suffered any constitutional deprivation. *Bounds* establishes that adequate legal assistance is an alternative means of fulfilling the obligation to provide prisoners with access to the courts. Neither the judge's findings nor the plaintiff's allegations assert that the plaintiff was or will be denied legal assistance from persons trained in the law. In fact, the plaintiff is represented by counsel both in this action and in his appeal of the conviction which we reversed. See *Commonwealth* v. *Harris, supra.*

Moreover, although the burden of proof is ultimately on the commissioner to show that the plaintiff did have adequate access to the courts, see *Rich* v. *Zitnay,* 644 F.2d 41, 43 (1st Cir. 1981); *Cruz* v. *Hauck,* 515 F.2d 322 (5th Cir. 1975), cert. denied sub nom. *Andrade* v. *Hauck,* 424 U.S. 917 (1976); *Blake* v. *Berman,* 625 F. Supp. 1523, 1525 (D. Mass. 1986), the plaintiff must at least make a prima facie showing of a lack of access, see *Cookish* v. *Cunningham,* 787 F.2d 1, 5 (1st Cir. 1986); *Rich* v. *Zitnay, supra* at 43; *Hossman* v. *Spradlin,* 812 F.2d 1019, 1021 n.2 (7th Cir. 1987). Due to the posture in which this case was presented to us, see *supra,* we have no way of knowing whether the plaintiff made a prima facie showing that he was denied adequate legal assistance. Certainly no such showing is apparent from the documentary evidence or facts conceded by the commissioner.

Because the record presented us does not support the judgment, the judgment is reversed. The matter is remanded to the Superior Court for proceedings consistent with this opinion, should further proceedings be needed. If further proceedings are not needed, then the complaint should be dismissed.

*So ordered.*