976 F.2d 724
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Paul F. COLMAN, Plaintiff, Appellant,
v.
Jean LAHOUSE, et. al., Defendants, Appellees.
 No. 92-1306.
 United States Court of Appeals,
First Circuit.
 Sept. 24, 1992
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Mark L. Wolf, U.S. District Judge]
 Paul F. Colman, on brief pro se.
 D.Mass
 AFFIRMED
 Before Breyer, Chief Judge Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Appellant is an inmate at the Massachusetts Correctional Institution at Norfolk. His in forma pauperis complaint, filed pro se, sought injunctive and monetary relief under 42 U.S.C. § 1983, for alleged violations of his rights under the Fifth and Fourteenth Amendments.[1] Named as defendants are the Commissioner and other officials of the Commonwealth's Department of Corrections. The district court dismissed the complaint sua sponte under 28 U.S.C. § 1915(d). For the reasons that follow, we affirm the district court's decision.
 
 
 2
 Appellant alleges that defendants have improperly denied him a transfer to a lower security facility because he has refused to admit committing the crime for which he is incarcerated. He argues that by conditioning his transfer on an admission of guilt, the defendants are threatening the viability of his attempts to overturn his conviction.
 
 
 3
 According to appellant's complaint, in July, 1977, he was wrongly convicted after a trial of rape of a child by force. He alleges that he has never admitted the offense, instead pursuing "post-conviction ... relief and appeals." He says he hopes or expects to soon win a new trial based on new evidence. Documents appended as exhibits to the complaint show that despite an otherwise favorable disciplinary record and recommendation of the Superintendent, the Unit Classification Committee Board at MCI-Norfolk has periodically declined to recommend appellant's transfer because of the "nature of the offense and his reluctance to accept responsibility for his crime." The Board's decision was affirmed by the Commissioner on each occasion. On September 20, 1990 appellant appealed to the Director of Programs and Classifications, arguing that the Board's decision violated appellant's Fifth Amendment privilege against self-incrimination.[2] The Director affirmed the transfer denial on October 19, 1990, but based his affirmance solely on the "serious nature of the offense."
 
 
 4
 28 U.S.C. § 1915(d) provides that the court may dismiss a complaint filed in forma pauperis if it is "satisfied that the action is either frivolous or malicious." A complaint is deemed frivolous only if it "lacks an arguable basis in law or in fact," contains an "indisputably meritless legal theory" or "fanciful" factual allegations. Neitzke v. Williams, 490 U.S. 319, 327 (1989). While suggestive of the standard for dismissal under Fed. R. Civ. P. 12(b)(6), "the standard is more rigorous." Johnson v. Rodriguez, 943 F.2d 104 (1st Cir. 1991), cert. denied, 112 S. Ct. 948 (1992); Street v. Fair, 918 F.2d 269, 273 (1st Cir. 1990).
 
 
 5
 In making this assessment, the district court must give the plaintiff the benefit of all the suggested facts and must indulge all reasonable inferences in his favor. If the complaint, so read, reveals 'arguably meritorious legal theories whose ultimate failure is not apparent at the outset' ... then the court should permit the action to proceed.
 
 
 6
 Johnson, 943 F.2d at 106 (quoting from Neitzke, 490 U.S. at 328).
 
 
 7
 As the district court held, appellant's due process claim has no legal merit. Due process clause protections attach only when there is a deprivation of an identifiable interest in life, liberty or property. These interests may be created either by the Fourteenth Amendment itself or by state law. Meachum v. Fano, 427 U.S. 215, 222 (1976). However, the Supreme Court has held that the Fourteenth Amendment does not create for prisoners a protectable "liberty" interest in prison transfers. Meachum, 427 U.S. at 223-26. And it has also been repeatedly held that the Massachusetts' law in question, Mass. Gen. L. ch. 127, §§ 20, 97, does not create any "liberty" interest to which the due process clause may apply. Meachum, 427 U.S. at 227 n.7; Four Certain Unnamed Inmates v. Hall, 550 F.2d 1291, 1292 (1st Cir. 1977); Nelson v. Commissioner of Correction, 390 Mass. 379, 397, 456 N.E. 2d 1100 (1983); Harris v. Commissioner of Correction, 409 Mass. 472, 477, 567 N.E.2d 906 (1991) (extending same interpretation to section of state law authorizing transfer to out-of-state prisons).
 
 
 8
 There have been no changes in the text of the state law since these decisions were rendered. On its face, the law vests broad and unfettered discretion in the Commissioner over prison transfers, with none of the substantive limitations which might signal creation of a "liberty" interest. See Olim v. Wakinekona, 461 U.S. 238, 249 (1983). And the regulations to which appellant points do not contain the types of specific directives to the decisionmaker which might arguably produce in an inmate a reasonable expectation of a particular result. See Bowser v. Vose, 1992 U.S. App. LEXIS 15187, at * 9-13 (1st Cir. June 30, 1992) (describing language which might produce such an expectation).
 
 
 9
 Appellant seemingly concedes on appeal that the district court's decision on his due process claim was correct. He argues, however, that the Board's decision violated his Fifth Amendment privilege against self-incrimination by forcing him to chose between making incriminating statements that may be used against him in the new trial he hopes to obtain, and a lower security transfer.
 
 
 10
 Were appellant's Fifth Amendment claim factually supportable, see infra pp. 8-9, we would be constrained to hold that it had an "arguable basis in law." Neitzke, 490 U.S. at 328. Though not unqualified, it is generally recognized that even after conviction, a defendant who shows a "real and appreciable risk" of subsequent incrimination may be entitled to assert the privilege against self-incrimination with regard to the crime. 1 John William Strong, et. al., McCormick on Evidence §§ 121, 122 (4th Ed. 1992); see also Taylor v. Best, 746 F.2d 220, 222-24 (4th Cir. 1984) (one appealing his conviction retains his privilege against self-incrimination). And requiring a prisoner to chose between his Fifth Amendment privilege and favorable post-conviction treatment may create a "classic penalty situation" in which the prisoner's answers would be deemed compelled and inadmissible in the criminal prosecution. Minnesota v. Murphy, 465 U.S. 420, 434 (1984) (holding that statements could be used against probationer in subsequent prosecution because government had not threatened him with revocation of his probation).
 
 
 11
 It has also been held that while a state may validly insist on answers to incriminating questions to enable it to sensibly administer its prison system, it may do so only if "it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." Murphy, 465 U.S. at 435 n.7 (probation system); cf. Taylor v. Best, 746 F.2d 220, 222-24 (4th Cir. 1984) (prison officials who promised confidentiality may compel answers for penological classification purposes, but evaluation would be suppressed if offered in subsequent criminal proceeding), cert. denied, 474 U.S. 982 (1985); United States v. Harrington, 923 F.2d 1371 (9th Cir. 1991); Pens v. Bail, 902 F.2d 1464 (9th Cir. 1990) (where prisoners assured confidentiality in psychiatric evaluations, their self-incriminating statements could not be used to enhance their sentence). In the scant record before us we find no indication that Massachusetts has erected a privilege of confidentiality for prisoner statements which would eliminate the threat of incrimination appellant alleges here. See Hawkins v. Commissioner of Correction, 406 Mass. 898, 551 N.E.2d 495 (1990) (holding that Massachusetts Fair Information Practices Act does not protect prisoner from disclosure of his classification and disciplinary reports offered against him by corrections officials in federal court action challenging a transfer decision based on the reports).
 
 
 12
 In terms of legal theory, then, appellant's Fifth Amendment claim might be said to have an arguable legal basis.[3] Although the Fourteenth Amendment does not create a "liberty" interest in prison transfers sufficient to require a hearing before a transfer, Meachum, 427 U.S. at 216; Montayne v. Haymes, 427 U.S. 236, 242 (1976), "nothing in these decisions expressly rule[s] out a challenge to a transfer [decision] on the ground that it violate[s] constitutional rights other than the right to procedural due process of law." Furtado v. Bishop, 604 F.2d 80, 87 (1st Cir. 1979), cert. denied, 444 U.S. 1035 (1980); see also McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979) (holding that complaint alleging that prison transfer was in retaliation for prisoner's exercise of a fundamental right states cause of action). Most courts which have considered the issue since Meachum are in accord. See Frazier v. Dubois, 922 F.2d 560 (10th Cir. 1990) (surveying circuit court decisions); 3 Joseph G. Cook & John L. Sobieski, Jr., Civil Rights Actions p 11.15 n.8 (1992), and cases cited therein.
 
 
 13
 But while in legal theory petitioner's Fifth Amendment claim may have some basis, it collapses on the facts petitioner pleads. The exhibits appended to the complaint show that appellant's "failure to take responsibility" was twice cited by the Unit Classification Committee Board for denying the transfer in its periodic reviews. The Board's decisions, however, are not the last word. It was the Commissioner alone, or his delegate, who had the statutory authority to make transfer decisions. Mass. Gen. L. ch. 124 §§ 1, 2; M.G.L. c. 127 §§ 20, 97. The Commissioner retained final authority over all periodic reviews under the regulations. 20 CMR § 420.08(6)(i). The last decision from the Commissioner's office, attached as an exhibit to appellant's complaint, was expressly based solely on "the serious nature" of the offense. This decision was in direct response to the very Fifth Amendment argument appellant makes here. Since the final, and only effective, denial of appellant's transfer was based on a reason that is unarguably lawful, appellant suffered no injury from the Board's decisions, even assuming for the sake of argument that they offended the Fifth Amendment. Cf. Gardner v. Martinez, 1988 WL 111954, at * 2 (E.D. Pa. Oct. 20, 1988) (§ 1983 claim properly dismissed where plaintiff could state no actionable injury from parole authorities' alleged violation of his privilege against self-incrimination, since charges allegedly based on improperly obtained information had been dropped, and plaintiff spent no additional time in prison as a result of the alleged violation of his privilege).
 
 
 14
 Thus we conclude that appellant's Fifth Amendment claim was also properly dismissed under § 1915(d) for lack of an arguable foundation in fact. This part of our decision, of course, extends no further than the date of appellant's complaint and the transfer decisions challenged therein.
 
 
 15
 For the reasons stated above, the decision of the district court is affirmed.
 
 
 
 [1]
 The complaint also alleges violations of plaintiff's First and Sixth Amendment rights. However, neither the complaint nor plaintiff's brief here explains the basis for these claims. Accordingly we take them to be mere surplusage
 
 
 [2]
 According to a copy of a letter appended to appellant's complaint, appellant undertook this "classification appeal" on the advice of one Deputy Nelson and the superintendent at MCI-Norfolk. The regulations to which we have been referred expressly allow an inmate to appeal the Board's decision only to the Superintendent. 20 CMR §§ 420.08(6)(h), 420.09(1). The Superintendent is then required to respond in writing to the inmate within ten working days." 20 CMR § 420.08(6)(h). The Superintendent's decision "shall be submitted for approval to the Commissioner or his designee," who makes the final decision. 20 CMR § 420.08(6)(i). Since neither the regulations nor statutes before us expressly provide for an inmate appeal to the Director of Programs and Classifications, we assume that the Director was the Commissioner's "designee" at the time and that further internal procedures allowed this direct inmate appeal
 
 
 [3]
 We emphasize that we do not reach the legal merit of appellant's claim here, nor do we express any opinion as to whether such a claim might withstand a motion to dismiss for failure to state a claim. Under § 1915(d) the court's only task is to determine whether it lacks "even an arguable basis in law," Neitzke, 490 U.S. at 328