Botsford, J.
INTRODUCTION
Plaintiffs, William Langton and Thomas Mclnerney, are prisoners in the custody of the Department of Correction (“the department”) at Massachusetts Correctional Institution, Shirley (“MCI-Shirley”). The defendants, all employees of the department at MCI-Shirley, are Peter Pepe, the superintendent, Carol Higgins, director of programs, Daniel Morse, the librarian, and Gerry Martin, the library assistant. Plaintiffs brought this suit claiming that defendants violated their constitutional right of access to the courts by failing to provide access to an adequate law *332 library and legal materials. Plaintiffs also claim that defendants violated certain regulations by opening plaintiffs’ legal mail outside the presence of plaintiffs. Currently before the court are plaintiffs’ motion for partial summary judgment and defendants’ motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, plaintiffs’ motion is DENIED, and defendants’ motion is ALLOWED IN PART and DENIED IN PART, WITHOUT PREJUDICE.
BACKGROUND
Plaintiffs are two inmates currently incarcerated at MCI-Shirley. There is no indication that they are not in the general population at Shirley; indeed, all suggestions are to the contrary. I assume they are in the general population.
Plaintiffs articulate various complaints which they contend amount to a denial of access to the courts. They claim that the law library hours conflict with other activities in which they wish to participate and that the library’s hours should be. more flexible. In his affidavit, plaintiff Mclnerney states that he gave up a morning job in the kitchen in order to be able to use the law library for three to four hours per week. In addition, he claims he was forced to relinquish two hours of law library time each week so that he could attend school. Plaintiff Langton, in his affidavit, states that he was forced to give up law library time in order to attend doctor’s appointments, make telephone calls, attend classification hearings, and take care of other business. He further states that the prison librarians have frequently or consistently refused his requests to photocopy his legal work product and to honor his inter-library loan requests, and that defendants have opened his legal mail outside of his presence and refused to deliver his legal mail to him in a timely fashion. Finally, he asserts that the library does not in fact have on its shelves all the books it is required to make available in accordance with department regulations and court orders.
Of essential relevance to plaintiffs’ claims are three court orders from prior cases. In 1974, in a case entitled Stone v. Boone, No. 73-1083-T (D.Mass. Oct. 1974), the United States District Court for the District of Massachusetts (Tauro, J.) issued a consent decree which listed specific books the law library at MCI-Walpole (now Cedar Junction) was required to make available to inmates.[3] In Langton v. Berman, No. 78-578-G (D.Mass. Jan. 1983), another judge of the United States District Court (Garrity, J.) ordered officials at the Southeastern Correctional Center, where plaintiff Langton was then incarcerated, to provide Plaintiff Langton with a minimum of eight hours of access to the law library per week. In Stewart v. Bender, Civil No. 87-1154 (Suffolk Super. Ct. July 5, 1988), a judge of this court (Cratsley, J.), in ruling on cross-motions for summary judgment, concluded that the plaintiffs there were entitled to summary judgment on their claim of a denial of their right of access to the courts. The court determined that the provision of three typewriters for over 700 inmates was legally inadequate. Plaintiffs now assert that defendants are in violation of all three of these court orders.
DISCUSSION
Plaintiffs allege generally that defendants have violated their constitutional right of access to the courts.[4] Their points of focus in the complaint are (1) inadequate law library reference materials and the use of microfiche to supplant some of those materials; (2) an insufficient number of typewriters for the inmates’ use; (3) inadequate access to photocopiers; (4) an insufficient number of hours of access to the library; (5) a failure to receive items requested via the inter-library loan program; (6) inadequate space for the law library; and (7) defendants’ practice of opening plaintiffs’ legal mail outside of their presence. Plaintiffs’ motion for partial summary judgment centers on three points: (1) the hours the law library is open; (2) the lack of typewriters available; and (3) the inadequate materials available in the library.
It appears that plaintiffs claim these deficiencies, perhaps individually but certainly collectively, amount to constitutionally inadequate access to the courts. They also seem to be claiming that in any event these deficiencies violate court orders and prison library regulations. With respect to the motion for partial summary judgment, plaintiffs assert that undisputed facts establish as a matter of law that (1) the library is not open for a sufficient number of hours; (2) the number of typewriters available is not up to the standard plaintiffs claim governs, which is one per one hundred inmates; and (3) the library at MCI-Shirley does not have the required books or services to constitute either a constitutionally adequate library or one that complies with the consent decree in Stone v. Boone or the Department of Correction’s regulations.
Defendants’ motion to dismiss or, in the alternative, for summary judgment takes the position that plaintiffs have failed to state a claim upon which relief can be granted because to prove a violation of the constitutional right of access to the courts, plaintiffs must allege and prove actual injury. Specifically, defendants argue that plaintiffs must allege they have been unable to bring or pursue a legal case relating to their sentence or to the conditions of confinement. See Lewis v. Casey, 116 S.Ct. 2174, 2180, 2182 (1996). Defendants further contend that plaintiffs cannot claim a violation of any of the court orders at issue since none applies to MCI-Shirley. They also assert that, in any event, as a factual matter there has been no violation of any court order because, as the affidavit of Daniel Morse indicates, defendants are in full compliance with the orders. Finally, defendants assert that plaintiffs have failed to state a claim under the Massachusetts Civil Rights Act, G.L.c. 12, §1II, because they do not allege that defendants used any threats, intimida *333 tion, or coercion to deprive plaintiffs of their civil rights.[5]
I discuss plaintiffs’ claims in the following order: (1) violation of the constitutional right of access to the courts; (2) violation of the three court orders; and (3) violation of State regulations.
I.Claim of Violation of Constitutional Right of Access to the Courts
In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held that “the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.” Id. at 828. See also Harris v. Commissioner of Correction, 409 Mass. 472, 479-80 (1991). In Lewis v. Casey, 116 S.Ct. 2174, 2180 (1996), the Court further elaborated on the right of access to the courts and made clear two points that are of significance here.
First, the Court clarified that the right prisoners possess is the right of access to the courts, not the right to a law library per se or any particular type of legal material or assistance. See id. at 2180 (citing Bounds, 430 U.S. at 825). The State must merely ensure that prisoners have a meaningful ability to bring claims relating to their sentence or the conditions of their confinement. Id. at 2182. It is not required to “guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.” Id. Moreover, the State has considerable discretion about how to accomplish the goal of providing meaningful access. See id. at 2180.
Second, the Lewis Court held that because the right guaranteed by Bounds is the right to the capability to bring a suit, as a matter of standing a plaintiff must allege and prove that he has been hindered or prevented from bringing suit because of the inadequate law library facilities or other alleged deficiencies. See Lewis, 116 S.Ct. at 2180. The injuries of which plaintiffs complain in this case, however, are the type which “may affect merely comfort or convenience without depriving a prisoner of access to the courts. A court cannot make the assumption that any alleged administrative deficiency or less than optimal clerical arrangement actually impedes a prisoner’s ability to file meaningful papers.” Sowell v. Vose, 941 F.2d 32, 34 (1st Cir. 1991) (quotation omitted).
Defendants are correct that the plaintiffs have failed to allege in the complaint, or state in their affidavits, that they have been harmed by any putative deprivations. They do not assert that any efforts to pursue a legal claim have been stymied by the inadequate law library facilities.[6] See Lewis, 116 S.Ct. at 2180. While plaintiff Langton does assert in his affidavit in support of plaintiffs’ opposition to defendants’ cross-motion for summary judgment that he has “lost” three cases, he does not explain whether he lost those cases because, for example, of an incapacity to comply with court rules due to inadequate library resources or to conduct sufficient legal research. There is nothing to suggest that plaintiff Mclnerney has lost any legal claims at all. Because plaintiffs have failed to allege the kind of injury required by Bounds and Lewis, I will deny plaintiffs’ motion for partial summary judgment and allow defendants’ motion to dismiss plaintiffs’ constitutional claims of being denied access to the courts.
II. Claim of Violation of Court Orders
I also conclude that defendants’ motion to dismiss should be granted with respect to plaintiffs’ claims that defendants violated the court orders in the three prior cases referenced above because plaintiffs do not have standing to challenge those orders. First, there is no indication that either of the plaintiffs was a party to Stone v. Boone or Stewart v. Bender. Second, and more significant, court orders apply to specific institutions; none of the orders applied to MCI-Shirley. While plaintiff Langton was obviously a parly to Langton v. Berman, that order was applicable only to his incarceration at the Southeastern Correctional Center. Furthermore, the Berman order mandated that plaintiff Langton receive eight hours per week of access to the law library because of the significant volume of litigation he had pending at the time (1983). The court considered and specifically declined to state that the Massachusetts prison population in general was entitled to the same amount of law library time. By implication, then, plaintiff Langton is not necessarily entitled to eight hours per week of library time over the entire period of his incarceration and at each institution in which he resides, independent or regardless of special circumstances.[7]
There is some theoretical merit to plaintiffs’ contention that defendants can avoid compliance with the court orders in the prior cases simply by moving prisoners who may complain about noncompliance to a different institution. On the facts here, though, this argument is unnecessary to explore. To begin, the orders in the other cases are respectively twenty-four, fifteen, and ten years old, and certainly the defendants should be free to move prisoners around in such time frames. More importantly, there is no need to reach the issue because, as a substantive matter, the complaints raised by plaintiffs in connection with the court orders can be and are addressed in my discussion of the claim that defendants have violated certain State regulations (see below). Accordingly, I will grant defendants’ motion to dismiss any independent claim for relief based on violations of one or more of the three referenced court orders.
III. Claim of Violation of Regulations
Although the argument is not completely spelled out, plaintiffs seem to contend that the alleged defi *334 ciencies in the libraiy materials and related services as well as defendants’ alleged reading of plaintiffs’ legal mail outside of their presence violate State regulations pertaining to correctional institutions. Their claims have some, but not complete, validity.
First, contrary to plaintiffs’ assertions, there is no evidence that the prison’s photocopying policies, as delineated in the various letters and memoranda attached as exhibits E, F, and H to plaintiff Langton’s affidavit in support of plaintiffs’ opposition to defendants’ cross-motion for summary judgment, violate 103 Code Mass. Regs. §478.11(4) (1993). That regulation states, in relevant part:
(a) Photocopying services shall be for the purpose of duplicating original legal documents and for the purpose of increasing access to the legal collection
(b) All photocopy requests shall be compiled within reasonable amounts at no charge. In order to provide photocopying services to all inmates, the Superintendent may establish guidelines and limits, subject to the review of the Commissioner or his /her designee.
103 Code Mass. Regs. §478.11(4) (1993). Because the regulation clearly grants the superintendent the discretion to limit the amount of photocopies made for each inmate in order to accommodate the requests of the entire prison population, I find that the prison’s photocopying policies comply with the regulation.[8] Therefore, defendants are entitled to summary judgment on this claim.
Plaintiffs also assert that the alleged inadequate law libraiy facilities and resources violate State regulations. The relevant regulation, 103 Code Mass. Regs. §478.11(2) (1993), states in pertinent part:
As suggested by federal and state court rulings and national standards, the law libraiy should include at a minimum: state and federal constitutions, state statutes, state decisions, procedural rules and decisions and related commentaries, federal case law, court rules, practice treatises, citators, legal periodicals and digests.
The first two clauses of this regulation imply that state correctional facilities’ law libraries should also contain the items listed in the Stone u. Boone consent decree. I cannot decide as a matter of law whether defendants have violated this regulation because there are material facts in dispute on this issue. Plaintiffs assert that many of the items on the Stone list are missing. Defendants, on the other hand, claim that they have always been in compliance with Stone and 103 Code Mass. Regs. §478.11 (2), and that any missing materials are due to theft or misplacement on the part of inmates. Furthermore, defendants contend that the libraiy is in the process of replacing any missing items. Because there is a question as to whether the libraiy currently houses all the materials required by 103 Code Mass. Regs. §478.11(2), defendants’ motion for summary judgment on this issue is denied without prejudice.[9]
Similarly, with respect to the number of typewriters available for inmate use, I cannot rule as a matter of law at this point because there appears to be a genuine issue of material fact. The relevant regulation provides:
Items such as pencils, typewriters, carbon paper, envelopes and notary services shall be provided to all inmates who request them and should be available free of charge. The Superintendent may establish guidelines and limits for such services, subject to the approval of the reviewing authority.
103 Code Mass. Regs. §478.11(5)(a) (1993). The regulation does not specify how many typewriters an institution is required to make available for the inmates, leaving that issue to the discretion of the superintendent.
Plaintiffs assert that at MCI-Shirley there are only four to six typewriters available for over 1,000 inmates. (See Langton affidavit in support of plaintiffs’ motion for partial summaiy judgment, at ¶12.) Defendants counter that there are eight to nine typewriters available. (See Affidavit of Daniel Morse in Support of Defendants’ Motion to Dismiss or, in the Alternative, for Summary Judgment, at ¶4.) In accordance with Stewart v. Bender, which the regulation appears to incorporate, it would seem that four typewriters for over 1,000 inmates would be legally insufficient. Because the number of typewriters available is disputed, however, the parties’ motions for summaiy judgment on this issue must be denied without prejudice.
Plaintiffs also claim that defendants have refused to honor plaintiffs’ inter-library loan requests. The regulation upon which this claim must be based is 103 Code Mass. Regs. §478.10(3) (1993), which provides: “The library should have cooperative inter-library loan affiliations with various segments of the libraiy community to supplement its own print and nonprint resources." I conclude that neither side has sufficiently addressed this regulation to warrant summary judgment for either party.
Finally, plaintiffs allege in their complaint that defendants have opened privileged mail outside the presence of plaintiffs on numerous occasions. Plaintiffs contend that such a practice violates the First Amendment of the United States Constitution as well as 103 Code Mass. Regs. §§481.11 and 481.12 (1996), the regulations relating to privileged mail. Section 481.12(2) provides, in relevant part:
Incoming privileged mail shall not be opened by an employee except in the presence of the addressee inmate for the sole purpose of ascertaining that its contents are free of contraband.
Section 481.11 (1) defines privileged mail as follows: *335 Inmates shall be permitted to mail to and receive letters from the following persons in accordance with the procedures set forth in 103 Code Mass. Regs. §481.12:
(a) Any officer of a court of the United States or the Commonwealth of Massachusetts (judge, attorney, clerk, parole board members, probation or parole officers);
(b) The President or Vice President of the United States or the Governor of the Commonwealth of Massachusetts;
(c) Any member of the Congress of the United States or any member of the General Court of the Commonwealth of Massachusetts;
(d) The Attorney General of the United States or the Attorney General of the Commonwealth of Massachusetts;
(e) The Director or any agent of the Federal Bureau of Investigation or the Commissioner of the Massachusetts Department of Public Safety;
(f) The Superintendent of the state correctional institution in which the inmate is confined, an Associate or Deputy Commissioner of Correction or the Commissioner of the Massachusetts Department of Correction!.]
Section 481.25 states that the superintendent of each correctional facility is responsible for implementing and monitoring the policies and procedures regarding inmate mail.
Plaintiffs attached to their opposition to defendants’ cross-motion for summary judgment copies of forty envelopes addressed to them and which they allegedly received already opened. Approximately thirteen of those letters, however, do not fall into any category of privileged mail.[10] Therefore, plaintiffs cannot complain if such letters were in fact opened outside of their presence. With respect to the remaining letters, defendants argue that none of the named defendants are responsible for inmate mail and that consequently they are entitled to judgment in their favor on this issue. The relevant regulation, 103 Code Mass. Regs. §481.25 (1996), however, specifically states that the superintendent, i.e. defendant Pepe, is responsible for monitoring inmate mail. Because defendant Pepe is indeed responsible for issues concerning inmate mail, defendants’ motion for summary judgment on this issue is denied without prejudice.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs’ motion for partial summary judgment is DENIED. It is further ORDERED that:
1.defendants’ motion to dismiss the plaintiffs’ claims under 42 U.S.C. §1983 and G.L.c. 12, §111 that defendants deprived plaintiffs of their constitutional right of access to the courts is ALLOWED;
2. defendants’ motion to dismiss with respect to the claim that defendants violated the court orders from three prior cases is ALLOWED;
3. defendants’ motion for summary judgment with respect to the claims that defendants violated certain state regulations is ALLOWED IN PART and DENIED IN PART, WITHOUT PREJUDICE.

The Stone decree also required MCI-Cedar Junction to provide adequate physical and support facilities, supervised access to the law library in the morning, afternoon and on the weekend, and a reasonable number of hours of access for the inmates.

Plaintiffs bring their claims of constitutional violations pursuant to 42 U.S.C. §1983 and G.L.c. 12, §111, the Massachusetts Civil Rights Act.

Defendants’ response to the claim that they read plaintiffs’ legal mail outside of plaintiffs’ presence will be discussed in Section III below.

In fact, Plaintiff Langton has been able to pursue at a minimum one other case in which he brought almost identical claims to the ones presented here. In that case, Langton v. Fair, No. 87-0430-Z (D.Mass. 1988), the United States District Court for the District of Massachusetts (Zobel, J.) found that plaintiff had not demonstrated any actual harm and granted summary judgment in favor of the Department of Correction. (Defendants assert that Langton has actually brought over 40 suits in Massachusetts.) Plaintiff Langton’s ability to file this and other suits belies any impediment to his access to the courts.

In any event, there has been no violation of the Berman order by defendants at MCI-Shirley. By their own admission (see Exhibit A to plaintiffs’ motion for partial summary judgment), plaintiffs are scheduled for well over eight hours per week of access to the library. That plaintiffs choose to participate in other activities during the hours they have access to the law library is their prerogative.

Plaintiffs also allege in the complaint and in their opposition to defendants’ cross-motion for summary judgment that defendants improperly read plaintiffs’ legal work prior to making photocopies of such papers. They claim that this violated their First Amendment rights. It seems apparent, though, that defendants were required to do so in order to determine whether the documents submitted were appropriate for photocopying. Thus, defendants have not violated any rights of plaintiffs with respect to this claim.

Defendants, however, are entitled to summary judgment with respect to plaintiffs’ claim that the law library space is inadequate. The dimensions specified in Stone v. Boone clearly pertain only to MCI-Cedar Junction. The amount of space and shelving required will vary from institution to institution depending on the size and inmate population.

Those pieces of mail that are not privileged are those with return addresses from the Board of Registration in Medicine, the Division of Registration’s Investigative Unit, the Massachusetts Department of Revenue, the Bureau of Prisons — Federal Correctional Institution, and the United States Postal Service Inquiry Division. Plaintiffs also attached two letters from plaintiff Langton to other prisoners and a letter from one prisoner to Langton. It is unclear why these letters would be included in a collection of letters that are allegedly legal mail addressed to plaintiffs and opened by defendants outside of plaintiffs’ presence. Whatever the reason, they, too, do not qualify as privileged mail under the regulation.