NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-230

COMMONWEALTH

vs.

VALENTINE UNDERWOOD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from the denial of his motion for a new trial.  In May 2014, following a jury trial in the Superior Court at which the defendant represented himself with the assistance of standby counsel, the defendant was convicted of kidnapping and aggravated rape.  He appealed, and his convictions were affirmed by a different panel of this court in an unpublished memorandum and order.  See Commonwealth v. Underwood, 97 Mass. App. Ct. 1107 (2020).  Thereafter, the defendant filed a motion for a new trial, which is the subject of this appeal.  By that time, however, the trial judge had retired, and the motion was denied without a hearing by another

Superior Court judge.  For the reasons that follow, we affirm the order denying the defendant's motion.

Discussion.  1. Jurisdiction.  We first address the Commonwealth's argument that we lack jurisdiction over this appeal because the defendant failed to file a timely notice of appeal.  The Commonwealth is correct that the notice of appeal was filed late.  However, as the defendant notes in his reply brief, our docket shows that a single justice of this court extended the time for filing a notice of appeal.  We discern no basis for concluding that the extension was improper and, therefore, we too deem the notice of appeal as timely filed.  See Mass. R. A. P. 14 (b), as appearing in 481 Mass. 1626 (2019).

2. Standard of review.  "Under Mass. R. Crim. P. 30 (b), a judge may grant a motion for a new trial any time it appears that justice may not have been done.  A motion for a new trial is thus committed to the sound discretion of the judge."  Commonwealth v. Scott, 467 Mass. 336, 344 (2014).

Here, in denying the defendant's motion, the judge reasoned that "[a]ll of the issues which [the defendant] purports to raise in this motion are based upon the Pretrial and trial record and either were or could have been raised on direct appeal."  We agree with the judge that the issues that were raised and resolved in the defendant's direct appeal are barred

2

by the doctrine of direct estoppel.  However, with regard to the defendant's remaining arguments, though waived, we review them to determine whether an error was committed and if so, we ask whether the error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Randolph, 438 Mass. 290, 293 (2002) (all claims, waived or not, must be considered).  Lastly, we note that where, as here, the motion judge only considered documentary evidence and did not hold an evidentiary hearing, we may draw our own conclusions from the record.  See Commonwealth v. Howard, 81 Mass. App. Ct. 757, 760 (2012).

3.  Direct estoppel.  As noted above, some of the arguments the defendant has raised in support of his motion for a new trial were litigated and resolved in this court by the defendant's direct appeal.  Accordingly, the doctrine of direct estoppel operates as a procedural bar to relitigating them.  See Commonwealth v. Rodriguez, 443 Mass. 707, 710-711 (2005).  We therefore do not address the defendant's arguments that (1) his motion to dismiss should have been allowed, (2) he was denied his right to an impartial jury when the judge refused to excuse juror No. 75 for cause, (3) the judge erred by admitting in evidence certain photographs and related testimony regarding the defendant's appearance, and (4) the admission of evidence of prior uncharged criminal conduct was unfairly prejudicial.

3

4. _Remaining claims_. We now turn to the defendant's remaining arguments. First, the defendant argues that he was denied access to legal materials and the law library by various Department of Correction (DOC) officials. The defendant made a similar claim in a federal law suit he brought against DOC officials. The defendant submitted pleadings and documents he obtained during the litigation of the federal lawsuit to support his claim in Superior Court. On review of those materials, we discern no merit to this argument.

We acknowledge that "[t]he constitutional right of access to the courts requires correctional officials 'to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries _or_ adequate assistance from persons trained in the law.'" _Cacicio_ v. _Secretary of Pub. Safety_, 422 Mass. 764, 773 (1996), quoting _Harris_ v. _Commissioner of Correction_, 409 Mass. 472, 479 (1991). At the same time, "[a]ny plan to give inmates access to the courts need only provide access that is adequate, effective, and meaningful when viewed as a whole." _Cacicio_, _supra_. Furthermore, as the Supreme Judicial Court stated in _Harris_, _supra_, "adequate legal assistance is an alternative means of fulfilling the obligation to provide prisoners with access to the courts." Here, there is no dispute that the defendant was provided with standby counsel, and little dispute that he had

4

the same access to the law library and legal materials provided to any inmate in his position. As the Commonwealth notes in its brief, according to the affidavit of Carol Lawton, deputy superintendent of programs at the Massachusetts Correctional Institution, Cedar Junction, the defendant was permitted to retain one cubic foot of legal documents, access the law library twice weekly, request books not in the prison collection, and use a laptop with flash-drive capabilities so that materials could be shared by and with standby counsel. Viewing these circumstances together, we conclude that the defendant had access to adequate legal assistance. To the extent the defendant's affidavit submitted in support of his new trial motion asserts otherwise, those assertions need not be credited. See Commonwealth v. Furr, 454 Mass. 101, 109 (2009) ("Although the judge did not make subsidiary findings explicitly refusing to credit the [defendant's] affidavit, we may reasonably assume from his denial of the defendant's motion that he did so").

Next, the defendant claims that on the fourth day of trial, he was denied his anti-inflammatory medication and, as a result, he experienced "withdrawals" and sleeplessness, which, in turn, hindered his ability to defend himself and violated his right to due process. Although the defendant reported to the judge that he had not received his medication, was "jumpy," and had not slept in two days, he did not ask for a continuance or state

5

that he could not proceed.  In fact, he informed the judge only that he was "just letting the Court know so the Court don't think I'm under the influence of something, something like that."  The defendant did not raise the issue again.[1]

The defendant now contends that he never received his medication, was unable to sleep for "three to four trial days," and suffered from "tremors, night sweats, loss of memory, irritability, and loss of focus."  However, our review of the record shows that he was able to participate fully in the trial by making objections and examining witnesses at the relevant times, and was not, as he claims, unable to defend himself.  Thus, even if we were to assume the truth of the defendant's subsequent assertions, which we do not, they do not provide a basis for concluding that his right to due process was violated.

The defendant next raises a series of claims based on various alleged errors by the trial judge.  He claims that he was precluded from (1) calling an alibi witness, (2) raising a defense of third-party culpability, and (3) challenging the chain of custody of deoxyribonucleic acid (DNA) evidence.

First, the alleged alibi witness, Rick Jay, was not on the defendant's witness list and the defendant failed to subpoena

---

[1] A prison official was present in court and confirmed that the defendant had been offered a replacement medication but had refused it, and further confirmed that the defendant's usual medication would be provided that day.

6

him or initiate an out-of-State process to secure his presence at trial. Nonetheless, the judge made clear that he would permit the witness to testify if the defendant could produce him. When Jay declined to appear voluntarily, it was the defendant's burden to procure his appearance. The defendant cannot now complain of his own ineffectiveness in this regard. Furthermore, although the defendant claims that Jay would provide exculpatory testimony, he has not provided an affidavit from him to support this assertion.

The defendant's claim that he was deprived of his right to present a defense of third-party culpability fares no better. At trial, the defendant pointed to two other men as potential suspects and solicited testimony that both men matched the victim's description of the assailant, and that at different times during the investigation, both men were considered suspects. The defendant appropriately (and effectively) relied on this evidence to argue there was reasonable doubt as to his guilt. Given these circumstances, we discern no support for the defendant's claim that he was deprived of the ability to present a third-party culprit defense.

The defendant's argument that he was precluded from soliciting evidence regarding a gap in the chain of custody of the DNA evidence also has no support in the record. The issue stemmed from the handling of the rape kit and the victim's

clothing from which the DNA evidence was extracted.  The specimens were obtained when the crimes occurred in 1988 and were stored at the New Hampshire State laboratory (lab) until they were sent to Cellmark Diagnostics for testing in 1996.  At that time, the results were not sufficiently discriminating based on then-existing technology, and a comparison with the defendant's DNA was inconclusive.  However, one of the two suspects discussed above was definitively excluded as a possible perpetrator of the crimes.  Then, in 2009, the evidence was tested at the Massachusetts State Police crime lab.  From the sperm fraction, a full single-source DNA profile was created that matched the defendant's profile.  The so-called gap occurred when the evidence was transported to Cellmark and back to New Hampshire.  The chain of custody form introduced at trial did not specifically note that the evidence had been sent to Cellmark and returned to New Hampshire.

There is no question that one goal of the defense was to create reasonable doubt on the ground that the DNA evidence was not reliable due to the age of the specimen and the alleged gap in the chain of custody described above.  However, contrary to the defendant's assertion, he was permitted to exploit deficiencies in the chain of custody and had the opportunity to further question law enforcement officers about the lack of documentation accompanying the transportation of the evidence.

8

Moreover, to the extent that the defendant did not delve further into the chain of custody issue, he did so prudently. As noted, while the testing performed at Cellmark was favorable to the defense in that a comparison of the specimen from the victim and the defendant's DNA was inconclusive, the tests also excluded one of the other suspects. By not inquiring further, the defendant kept the proverbial door closed on this evidence, and ultimately the fact that the DNA testing excluded one suspect was not presented to the jury.

Lastly, the defendant argues that his appellate counsel provided him with ineffective assistance by failing to raise the issues we have discussed above. In light of our conclusion that

none of the claimed errors created a substantial risk of a miscarriage of justice, there is no merit to this claim.

> Order denying motion for a
> new trial affirmed.

By the Court (Vuono,
Englander & Hodgens, JJ.[2]),

*Paul Little*

Clerk

Entered:  January 13, 2025.

---

[2] The panelists are listed in order of seniority.